UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| N. A. Lambrecht and Jeffrey P. Jannett, Derivatively on Behalf of Nominal Defendant Eli Lilly & Company,<br><br>Plaintiffs,<br><br>v.<br><br>Sidney Taurel, John C. Lechleiter, Sir Winfried Bischoff, J. Michael Cook, Franlyn G. Pendergast, Kathi P. Seifert, George M. Fisher, Alfred G. Gilman, Martin S. Feldstein, J. Erik Fryrwald, Ellen R. Marram, Sir John Rose, Charles E. Golden, Steven C. Beering, Augsut M. Watanabe, Linda Lay, Randall L. Tobias and J. Clayburn LaForce, Jr.,<br><br>Defendants<br><br>-and-<br><br>ELI LILLY & COMPANY,<br><br>Nominal Defendant. | Civil Action No. _____<br><br>1: 08-cv-0068-DFH-TAB<br><br><br><br>JURY TRIAL DEMANDED |

### VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiffs, by their attorneys, allege for their Verified Shareholder Derivative Complaint, upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief based upon, inter alia, the investigation made by and through their attorneys, as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs and the dispute is between citizens of different states. This action is not brought collusively to confer jurisdiction on this Court.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred here.

## DERIVATIVE ALLEGATIONS

3. Plaintiffs bring this action derivatively pursuant to Federal Rule of Civil Procedure 23.1 on behalf of and for the benefit of Eli Lilly & Company ("Lilly" or the "Company") to remedy the wrongdoing alleged herein.

4. Plaintiffs will fairly and adequately represent the interests of the Company in enforcing and prosecuting its rights and has retained competent counsel, experienced in derivative litigation of this nature to prosecute this action.

5. Plaintiffs have owned stock in Lilly at all times relevant hereto.

6. As alleged more fully below, each plaintiff made a demand on Lilly's board of directors for remedial action. Through failure to act with reasonable promptness to take the demanded remedial actions, the Lilly board has constructively refused plaintiffs' demands.

## PARTIES

### Plaintiffs

7. Plaintiff N.A. Lambrecht is and has been the owner of Lilly common stock during all times relevant to this action. Lambrecht is domiciled in the State of Florida.

8. Plaintiff Jeffrey P. Jannett is and has been the owner of Lilly common stock during all times relevant to this action. Jannett is domiciled in the State of Michigan.

**Nominal Corporate Defendant**

9. Nominal defendant Lilly is a corporation organized under the laws of the State of Indiana, and maintains its principal executive offices in Indianapolis, Indiana. Lilly discovers, develops, manufactures, and sells products in one significant business segment — pharmaceutical products. Headquartered in Indianapolis, it manufactures and distributes its products through owned or leased facilities in the United States, Puerto Rico, and 25 other countries, and its products are sold in approximately 140 countries.

10. Lilly's human pharmaceutical products span several areas, including neuroscience, endocrine, oncology, cardiovascular, anti-infectives, and other categories. Some of its best known drugs are Zyprexa, Prozac, Straterra, Evista, Ceclor, and Cialis. The Company also produces animal health products including several anti-biotics, parasiticides, and livestock feed additives.

11. Lilly reported net sales of $15.7 billion and net earnings of $2.66 billion for its 2006 fiscal year. Its common stock is listed and traded on the New York Stock Exchange, and as of November 16, 2007 the Company had an equity market capitalization of approximately $58.77 billion.

**Current Lilly Directors**

12. Defendant Sidney Taurel ("Taurel") has been the Chairman of the Board of Directors of the Company since January 1999, its Chief Executive Officer since July 1998, and a director of the Company since 1991. He also served as President from February 1996 through September 2005, Executive Vice President of the pharmaceutical division from 1991 to 1993,

and Executive Vice President of the company from 1993 to 1996. He is a member of the executive committee of the board of directors of Pharmaceutical Research and Manufacturers of America (PhRMA), and served as Chairman of the PhRMA board in 1998. Taurel is domiciled in Indiana.

13. Defendant John C. Lechleiter, ("Lechleiter"), Lilly's President and Chief Operating Officer, has been a director of the Company since 2005. Throughout the period at issue in this action, Lechleiter has served in senior executive positions at Lilly in which he had direct knowledge and responsibility for all matters relating to Zyprexa: in 1993, he was named Vice President of Pharmaceutical Development; Vice President of Regulatory Affairs in 1994; by 1996, the year of Zyprexa's first FDA approval, Lechleiter had been named Vice President for Development and Regulatory Affairs; he became Senior Vice President of Pharmaceutical Products in 1998, Executive Vice President, Pharmaceutical Products and Corporate Development in 2001, Executive Vice President, Pharmaceutical Operations in 2004, and took his current position as President, COO and director in 2005. Lechleiter is domiciled in Indiana.

14. Defendant Sir Winfried Bischoff has been a Lilly director since 2000. Bischoff is a member of the Directors and Corporate Governance Committee, and the Finance Committee. From 2002 through 2005, he served as Audit Committee Chairman, and served as a member of the Audit Committee from 2000 through 2005. Bischoff has served as chairman, Citigroup Europe, since April 2000, and stepped into the role of interim CEO of Citigroup on November 4, 2007 upon the resignation of Former CEO Charles Prince. Prior to and throughout Bischoff's tenure as a Lilly director, Lilly has had commercial banking, capital markets, and indenture trustee relationships between Lilly and various Citigroup banks. Bischoff is a British citizen.

15. Defendant J. Michael Cook ("Cook") has been a director of the Company since February 2005. Since that time he has served on the Audit Committee and has chaired that Committee since 2006. Cook was the chairman and CEO of Deloitte and Touche LLP from 1989 to 1999. Cook is domiciled in Connecticut.

16. Defendant Franklyn G. Pendergast ("Pendergast") has been a Lilly director since 1995 and has served on the Audit Committee continuously since joining the board. Pendergast is a Professor of Biochemistry, Molecular Biology, Molecular Pharmacology and Experimental Therapeutics at the Mayo Medical School and is a director of the Mayo Clinic. During Pendergrast's tenure as a Lilly director and Audit Committee member, Lilly has made contributions to the Mayo Medical School, Mayo Clinic, and Mayo Foundation. Pendergast is domiciled in Minnesota.

17. Defendant Kathi P. Seifert ("Seifert") has been a director of the Company since 1995. Seifert has been a member of the Audit Committee since 1998, and has been the Chairman of the Public Policy and Compliance Committee (prior to 2003, the Public Policy Committee) since 1998 and a member of that committee since 1996. Seifert has extensive senior executive management experience in consumer products branding, marketing and sales, having served until 2004 as Executive Vice President in charge of global branding, product positioning, R&D, capital investment and North American sales force oversight at Kimberly-Clark Corporation. Seifert is domiciled in Wisconsin.

18. Defendant George M. Fisher ("Fisher") has been a director of the Company since 2000, and has been a member of the Compensation Committee since joining the board. He has been Chairman of the Directors and Corporate Governance Committee since 2001. Fisher was Chairman and CEO of Eastman Kodak Company until 2000, and was Chairman and CEO of

Motorola, Inc. from 1990 to 1993. Fisher is currently a senior adviser to Kohlberg, Kravis & Roberts. Fisher is domiciled in Arizona.

19. Defendant Alfred G. Gilman ("Gilman") has been a director of the Company since 1995, and since that time has been a member of the Public Policy and Compliance Committee and the Science and Technology Committee. He currently is chairman of the Science and Technology Committee. Gilman has been a Professor of Pharmacology at the University of Texas Southwestern Medical Center since 1981, and since 2005 has served as Executive Vice President for Academic Affairs and Provost of that institution, as well as Dean of the University of Texas Southwestern Medical School. During Gilman's tenure on the Lilly board, Lilly has made grants and contributions to the University of Texas Southwestern Medical Center. Gilman is domiciled in Texas.

20. Defendant Martin S. Feldstein ("Feldstein") has been a director of the Company since 2002, and has served on the Audit Committee and the Public Policy and Compliance Committee since that time. Since 2005, Feldstein has also served on and chaired the Finance Committee. Feldstein is a Professor of Economics at Harvard University, and is President and CEO of the National Bureau of Economic Research. During Feldstein's tenure on the Lilly board, Lilly has made grants and contributions to Harvard University and the National Bureau of Economic Research. Feldstein is domiciled in Massachusetts.

21. Defendant J. Erik Fyrwald ("Fyrwald") has been a director of the Company since 2005. Since joining the board, Fyrwald has been a member of the Compensation Committee. Fyrwald is Group Vice President of DuPont Agriculture & Nutrition. Dupont supplies to Lilly chemicals used in Lilly's pharmaceutical manufacturing operations. Fyrwald is domiciled in Iowa.

22. Defendant Ellen R. Marram ("Marram") has been a director of the Company since 2002, and has served on the Compensation Committee and the Directors and Corporate Governance Committee since that time. Marram is President of The Barnegat Group LLC, a business advisory firm, and has had extensive senior executive management experience, having served as President and CEO of Tropicana from 1993 through 1998, and as President and CEO of the Nabisco Biscuit Company, an operating unit of Nabisco, Inc. from 1988 to 1993. Marram is domiciled in Connecticut.

**Former Lilly Board Members**

23. Defendant Sir John Rose ("Rose") was a director of the Company from 2003 to 2005, and during that time served on the Directors and Corporate Governance Committee and the Finance Committee. Rose is a British citizen.

24. Defendant Charles E. Golden ("Golden") was a director of the Company from 1996 to 2005. During that entire time, he also served as Executive Vice President and Chief Financial Officer of the Company, as well as a member of the Finance Committee. Golden is domiciled in Indiana.

25. Defendant Steven C. Beering ("Beering") was a director of the Company from 1983 to 2005. From 1995 through 1997, Beering served on the Audit Committee, and at all relevant times hereto, he also served on the Compensation Committee, the Directors and Corporate Governance Committee and the Science and Technology Committee. Beering served as president of Purdue University from 1983 until 2000, and as dean of Indiana University School of Medicine from 1974 to 1983. Beering is domiciled in Indiana.

26. Defendant August M. Watanabe ("Watanabe") was a director of the Company from 1994 to 2003. From 1996 forward, he served the Company as Executive Vice President, Science

7

and Technology, as well as being a member of the board's Science and Technology Committee. Watanabe is domiciled in Indiana.

27. Defendant Linda Lay, executor of the will of Kenneth L. Lay ("Lay"), is domiciled in Texas. Lay was a director of the Company from 1993 to 2001, and served as a member of the Compensation, Directors and Corporate Governance, and Finance Committees from 1995 until he left the board. Lay was Chairman of the Board of Enron Corporation from 1986 until his resignation in January 2002, and was CEO during that time except for the period from February 2001 to August 2001, when Jeffrey Skilling held that title. In May 2006, both Lay and Skilling were convicted of felony conspiracy and fraud charges in connection with the collapse of Enron. Lay died in July 2006, leaving his estate to his wife, defendant Linda Lay, who is sued solely in her capacity as the personal representative of Lay's estate.

28. Defendant Randall L. Tobias was a director of the Company from 1986 to 1998, and was Chairman of the Board and Chief Executive Officer of the Company from 1993 to 1998. Tobias also served on the Public Policy Committee and as an "ex officio" member of the Directors and Corporate Governance Committee. Prior to joining the Company as CEO, Tobias was Vice Chairman of AT&T and Chief Executive Officer of AT&T International. Tobias is domiciled in the District of Columbia.

29. Defendant J. Clayburn LaForce, Jr., was a director of the Company from 1981 to 1998, serving during times relevant hereto as chair of the Public Policy Committee and as a member of the Directors and Corporate Governance Committee and the Science & Technology Committee. LaForce was dean of the John E. Anderson Graduate Scholl of management at UCLA from 1978 to 1993, and as a director of numerous mutual fund families. La Force is domiciled in California.

8

**Officers of Lilly**

30. Defendants Taurel, Lechleiter, Tobias, Golden, and Watanabe, identified above as current or former directors of Lilly, are sued not only as directors, but also in their capacities as officers of Lilly, based on breaches of fiduciary duty owed as officers of the Company.

31. The defendants described in paragraphs 12 through 30 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

32. Since September 2005, Lilly has paid $1.2 billion to settle claims by patients or their survivors alleging that Zyprexa caused or contributed to diabetes or high blood-glucose levels and that Lilly inadequately tested for and warned about potentially harmful side effects of Zyprexa. Many of the claims also allege that the Company improperly promoted the drug. Hundreds of unsettled similar claims remain, as well as class actions in the United States and Canada. The products liability litigation has led to public disclosure of internal Lilly documents suggesting that Lilly withheld from the FDA and the public clinical evidence of the severity of Zyprexa's metabolic side effects, and also that the Company embarked on a campaign, known as "Viva Zyprexa," of wrongfully promoting Zyprexa for off-label uses from 2000 through 2003. Lilly is under investigation by the federal government for off-label promotion of Zyprexa as well as Medicaid best price violations and False Claims Act violations, and faces parallel investigations by over 25 states, as well as numerous suits by States to recover damages relating to Zyprexa.

33. The Company was previously required to settle a federal investigation into the off-label promotion of Evista, its bone loss drug, in 2005, pleading guilty to off-label promotion and paying a total of $36 million in disgorgement and fines. The Evista investigation started in 2002

when Lilly received the first subpoenas in the matter. Nonetheless, the Company and certain directors and officers, permitted the continuation of the Company's off-label promotion of Zyprexa well into 2003. The Defendants recklessly or knowingly permitted the Viva Zyprexa campaign to continue.

34. Defendants engaged in similar conduct with respect to the marketing of Prozac, wrongfully marketing the drug for unapproved off-label uses while concealing its ties to suicidal behavior. The Company has settled multiple private claims. The Company is now facing class action litigation in Canada relating to concealed side effects of the medication.

## The Regulatory Environment In Which Lilly Operated

35. The Individual Defendants were at all relevant times aware that Lilly operated within a highly regulated industry. This awareness is directly evidenced by statements made in Lilly's Annual Reports on Form 10-K, which were reviewed and signed by each director of Lilly at the time of filing. For example, in Lilly's 3.26.99 10-K, the following statement explains the regulatory environment within which the Company operates:

> For many years the Company's operations have been regulated extensively by the federal government, to some extent by state governments, and in varying degrees by foreign governments. The Federal Food, Drug, and Cosmetic Act, other federal statutes and regulations, various state statutes and regulations, and laws and regulations of foreign governments govern to varying degrees the testing, approval, production, labeling, distribution, post-market surveillance, advertising, dissemination of information, and promotion of the Company's products. The lengthy process of laboratory testing, clinical testing, data analysis and regulatory review necessary for required governmental approvals is extremely costly and can significantly delay product introductions in a given market. *Promotion, marketing and distribution of pharmaceutical products are extensively regulated in all major world markets.*

(emphasis added). Statements virtually identical to the paragraph quoted immediately above appear in Lilly's Form 10-K filings for 2000 through 2003. Director Lay and each of the

following defendants signed such filings: Taurel, Lechleiter, Bischoff, Pendergast, Seifert, Fisher, Gilman, Feldstein, Marram, Rose, Golden, Beering, Watanabe, Tobias, and La Force.

36. The FDA has long taken an aggressive enforcement stance against off-label promotion. Through warning letters and other punitive and precautionary statements, the FDA controls the communication of drug benefit claims that have not yet been reviewed, accepted, and incorporated into the FDA-approved labels for the drug. In recent years, criminal investigations of off-label promotion practices have resulted in settlements involving massive payments by violators. For example, Pfizer/Warner-Lambert paid $430 million in May 2004 for engaging in a scheme to promote Neurontin for off-label uses.

37. The industry was on clear notice of the risk of regulatory liability for illegal marketing and promotion practices long before the Pfizer/Warner-Lambert settlement hit the news. The potential for large regulatory liability was evident from the magnitude of revenues from prescription drug sales, coupled with the aggressive enforcement stance of the FDA and other federal authorities. In 2001, TAP Pharmaceutical paid $875 million to settle criminal charges and civil liabilities with regard to its pricing and marketing of the drug Lupron.

38. The Individual Defendants were aware of or recklessly disregarded the risk of substantial losses to the Company and its shareholders posed by illegal drug marketing and promotion practices by not later than 2001.

## PLAINTIFF SHAREHOLDER DEMANDS FOR REMEDIAL ACTION

39. Following a series of New York Times articles that began in December 2006, by letter of counsel dated March 29, 2007 (the "Lambrecht Demand"), Plaintiff N.A. Lambrecht and her husband, Dr. Jaime Lambrecht, demanded that the Lilly board take remedial action, including commencement of legal proceedings against "each present and former member of Lilly's Board of Directors and each other person or entity responsible" for breaches of fiduciary duty in connection with Lilly's illegal marketing and promotion of Prozac, Evista and Zyprexa, including the concealment of risk and off label marketing described above.

40. Following Plaintiff Jannett's authorization, on September 20, 2007 counsel wrote to the Lilly board to demand that it take remedial action on behalf of the Company (the "Jannett Demand"). The Jannett Demand laid out the facts concerning concealment of metabolic side effects of Zyprexa, and off-label promotion of Zyprexa and Evista. Furthermore, the Jannett demand alleged deficiencies in Lilly's corporate governance, internal control, and compliance practices. The Jannett Demand listed specific remedial measures to be undertaken by the Company, including investigation of the matters set forth in the letter and undertaking appropriate legal, remedial and disciplinary action.

41. Now more than nine months since the first Demand was made, the Lilly Board has responded slowly. Although appointing a committee to investigate the matters set forth in the Demand, action has not been undertaken in a timely manner, including investigation and remedial measures. Defendants' response constitutes a constructive refusal of the Demands. Plaintiffs are therefore entitled to proceed derivatively on behalf of Lilly.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF DUTY

42. Based on their duties to the Company, each of the Individual Defendants has breached his or her fiduciary obligations of care and good faith in either knowingly or recklessly permitting the wrongful conduct set forth above to occur and continue. As detailed above, the Defendants knowingly or recklessly failed to oversee the operations of the Company in such a manner so as to comply with applicable regulatory requirements, the Company's own internal policies and other internal controls. The Individual Defendants, as alleged above, had knowledge or were reckless in failing to detect the wrongful conduct in which management was engaged.

43. Defendants Taurel, Lechleiter, Tobias, Golden, and Watanabe, as current or former senior executive officers of Lilly, as a result of their executive duties during the times relevant hereto, had direct knowledge of Lilly's activities with respect to the marketing of Zyprexa, Evista, and Prozac. Each of them, through actions taken in their respective executive roles and functions as alleged herein, acted deliberately and in bad faith or recklessly to cause the illegal and wrongful actions by the Company alleged herein, in violation of their fiduciary duty of loyalty.

44. Those Defendants who are current directors of Lilly have breached their duties in failing to conduct a good faith and reasonable investigation of the demands and in failing to take each of the remedial actions listed in the demands. The events alleged above provide the basis for an inference that the Individual Defendants knowingly or recklessly breached their fiduciary obligations of care and oversight.

45. The Defendants' conduct exposed the Company to substantial risk of damage, including regulatory and private investigations and litigation. As set forth below, the Company

has incurred and may continue to incur substantial damages as the result of these governmental and private claims.

## HARM TO LILLY AND ITS SHAREHOLDERS

46. As a result of the Individual Defendants' breaches of their fiduciary duty, Lilly has suffered financial harm, including substantial payment in settlement of Zyprexa personal injury and death claims. The Company is exposed to potential damages arising out of continuing governmental investigations and proceedings, as set forth above, and continuing private actions. Lilly has stated that it is unable to estimate the potential liabilities it faces, and that these liabilities could affect Lilly's consolidated results of operations, liquidity, and financial position.

## COUNT I
## AGAINST THE INDIVIDUAL DEFENDANTS
## FOR BREACH OF FIDUCIARY DUTY

47. Plaintiffs repeat and re-allege each of the allegations set forth hereinabove as if fully set forth herein.

48. Based upon the allegations set forth in the preceding paragraphs, the Individual Defendants intentionally or recklessly breached their fiduciary duties and aided and abetted one another in breaching their fiduciary duties to the Company.

49. Those Individual Defendants who participated in or had knowledge of the "Viva Zyprexa" off-label marketing campaign and/or misrepresentation to the FDA, the medical community, and the public regarding the metabolic risks of Zyprexa, as well as the similar conduct relating to Evista and Prozac alleged above, acted deliberately or recklessly, thereby breaching their fiduciary duty of loyalty to the Company.

50. The Individual Defendants who were directors and/or senior executive officers of the Company abused the trust reposed in them by virtue of their positions and breached their

fiduciary duty of loyalty by abdicating their duty of oversight. As the result of their sustained and systematic failure to exercise oversight, the Individual Defendants caused or allowed the Company's business to be conducted in violation of the extensive legal requirements and regulations known to them, including prohibitions against off-label marketing and promotion, Medicaid rebate requirements (including "best price" reporting requirements), and prohibitions against the submission of false claims, as well as duties to provide accurate and truthful information concerning adverse effects of marketed pharmaceutical products.

51. The Individual Defendants who are current directors of Lilly have breached their fiduciary duties of loyalty and care by their knowing or reckless failure to conduct a good faith and reasonable investigation of the demands, and in failing to take the remedial actions listed in the demands.

52. By reason of the foregoing, the Individual Defendants have proximately caused injury to the Company, which has been and will continue to be substantially damaged as the foreseeable result of their wrongful acts and omissions.

53. As shareholders of the Company, the Company's board having wrongfully refused their demands for remedial action, plaintiffs have no adequate remedy at law.

**COUNT II**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**WHO ARE CURRENT LILLY DIRECTORS FOR WASTE**

54. Plaintiffs repeat and re-allege each of the allegations set forth hereinabove as if fully set forth herein.

55. The claims described in the demands and hereinabove against the current and former directors and officers of Lilly constitute valuable property of the Company.

56. Abandonment of or failure to prosecute such claims constitutes a waste of corporate assets.

57. Failure to cause the Company to prosecute such claims to obtain appropriate damages from such persons constitutes abandonment of such claims.

58. By their failure to act upon the Demands and take the remedial actions listed therein, including commencing legal action to obtain damages and/or other appropriate remedies for the benefit of the Company, each one of the current directors of Lilly has committed waste and should be held accountable to the Company.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

A.  Declaring that the directors and officers named as Individual Defendants herein have breached their fiduciary duties as alleged herein;

B.  Requiring the Individual Defendants to pay to the Company the amounts by which it has been damaged or will be damaged by reason of the conduct complained of herein;

C.  Requiring the Individual Defendants to remit to the Company all of their salaries and other compensation received for the periods when they breached their duties;

D.  Ordering that the Individual Defendants and those under their supervision and control refrain from the commission of such further unlawful activities as are alleged herein and implement comprehensive corrective measures including a system of internal controls and procedures sufficient to prevent the repetition of the acts complained of herein which will rectify all such wrongs as have been committed and prevent their recurrence;

E.  Awarding Plaintiffs reasonable attorneys' fees, expert fees and other reasonable costs and expenses; and

F.  Granting such other and further relief as this Court may deem just and proper.

Dated: January 17, 2008

                                  Respectfully submitted,

                                  _____
                                  James P. Strenski, #18186-53

                                  BINGHAM MCHALE LLP
                                  10 W. Market Street, Suite 2700
                                  Indianapolis, IN 46204
                                  (317) 968-5417
                                  jstrenski@binghammchale.com

Karen L. Morris
Patrick F. Morris
MORRIS AND MORRIS LLC COUNSELORS AT LAW
1105 North Market Street, Suite 803
Wilmington, DE 19801
(302) 426-0400
kmorris@morrisandmorrislaw.com
pmorris@morrisandmorrislaw.com

Applications for Leave to Appear Pro Hac Vice
Pending

Richard D. Greenfield
GREENFIELD & GOODMAN LLC
780 Third Avenue, 48th Floor
New York, NY 10017
(410) 320-5931
whitehatrdg@earthlink.net

Application for Leave to Appear Pro Hac Vice
Pending

OF COUNSEL:

Bruce G. Murphy
LAW OFFICES OF BRUCE G. MURPHY PC
265 Llwyd's Lane
Vero Beach, FL 32963
(772) 231-4202

Attorneys for Plaintiffs