UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

| | |
|---|---|
| N.A. Lambrecht and Jeffrey P. Jannett, : | |
| Derivatively on Behalf of Nominal : | |
| Defendant Eli Lilly & Company : | |
| : | |
| Plaintiffs, : | C.A. No. 1:08-cv-0068-WTL-TAB |
| : | |
| v. : | |
| : | |
| Sidney Taurel, John C. Lechleiter : | |
| Sir Winfreid Bischoff, J. Michael Cook, : | |
| Franklyn G. Pendergast, Kathi P. Seifert, : | |
| George M. Fisher, Alfred G. Gilman, : | |
| Martin S. Feldstein, J. Erik Fyrwald, : | |
| Ellen R. Marram, Sir John Rose, : | |
| Charles E. Golden, Steven C. Beering, : | |
| August M. Watanabe, Linda Lay, : | |
| Randall L. Tobias and : | |
| J. Clayburn LaForce, Jr., : | |
| : | |
| Defendants : | |
| : | |
| -and- : | |
| : | |
| ELI LILLY & COMPANY, : | |
| : | |
| Nominal Defendant. : | |

_____ :

**STIPULATION OF SETTLEMENT**

This Stipulation of Settlement ("Stipulation"), dated as of February 25, 2010, is entered

into, by and through their respective undersigned counsel, by: (a) N. A. Lambrecht; Dr. Jaime

Lambrecht; Jeffrey P. Jannett; Linda A. Waldman; Aaron Soloman; the City of Taylor General

Employees Retirement System; Doris Staehr; Laurie G. Robbins; and Edward Zemprelli

(collectively "Plaintiffs"); (b) nominal defendant Eli Lilly & Company ("Lilly" or the

"Company"); and (c) Sidney Taurel, John C. Lechleiter, Sir Winfried Bischoff, J. Michael Cook,

Franklyn G. Prendergast, Kathi P. Seifert, George M.C. Fisher, Alfred G. Gilman, Martin S. Feldstein, J. Erik Fyrwald, Karen N. Horn, Ellen R. Marram, Sir John Rose, Charles E. Golden, Steven C. Beering, August M. Watanabe, Linda Lay, Alva O. Way, Randall L. Tobias, J. Clayburn Laforce, Jr., Alan Breier, Charles M. Beasley, Jr., Gary D. Tollefson, Simon N.R. Harford, and Gerhard N. Mayr (collectively, the "Individual Defendants"; with (b), collectively, the "Settling Defendants"; and with (a) and (b), collectively, the "Settling Parties"). This Stipulation is intended by the Settling Parties to fully, finally and forever compromise, resolve, discharge, and settle the Released Claims (as defined herein) and the Derivative Actions (as defined herein) in accordance with the terms and conditions set forth below, subject to the approval of the United States District Court for the Southern District of Indiana (the "Court"), and any other courts as may be required:

## HISTORY OF THE LITIGATION AND SETTLEMENT PROCESS

A.      During the course of 2007, Lilly shareholders N.A. Lambrecht, Dr. Jaime Lambrecht, Doris Staehr and Jeffrey P. Jannett sent demand letters to Lilly's board of directors (the "Board"), demanding the Company take legal action against certain members of the Board and senior management responsible for the alleged breaches of fiduciary duty relating to some or all of the following: the alleged improper marketing of Zyprexa® for off-label use and alleged concealment of risks relating to weight gain, hyperglycemia and diabetes; the alleged improper marketing and promotion of Prozac® and Evista®; and alleged improper rebate agreements in connection with the sale of Axid®, Evista®, Humalog®, Humulin®, Prozac® and Zyprexa®.

B.      Between January 2008 and June 2008, seven shareholder derivative complaints were filed in three separate jurisdictions, asserting substantially similar claims and naming then current and certain former Board members and senior officers of Lilly as defendants. The seven

shareholder derivative actions are identified in Section I "Definitions," at provision 1.3 below (collectively "the Derivative Actions").

C.     In or around March 2008, counsel for plaintiffs Jannett, the Lambrechts and Waldman; counsel for Lilly; and counsel for the Special Litigation Committee of the Board (the "SLC") entered into an agreement pursuant to which the parties agreed to engage in a series of meetings and other communications to explore the possibility of a negotiated resolution of the claims asserted in the Derivative Actions.  This was a successor agreement to an agreement plaintiffs Jannett and Lambrecht, counsel for Lilly, and counsel for the SLC had entered into in December 2007.  Thereafter, each of the counsel for plaintiffs in the Derivative Actions became signatories to the March 2008 agreement. Plaintiffs' Counsel separately entered into a "Coordination Agreement," which established procedures for the efficient and effective management and prosecution of the Derivative Actions.

D.     Beginning in July 2008, and continuing through May 2009, Lilly produced approximately 85,000 pages of documents relevant to an analysis of the merits of the alleged underlying wrongdoing and to the corporate governance and compliance issues, including forty-eight (48) deposition transcripts of Lilly employees and twenty-two (22) expert witness deposition transcripts, reports, and exhibits.  Plaintiffs' Counsel retained experts to assist them in their analysis and in the negotiation process.

E.     Beginning in September 2008, the Settling Parties engaged in extensive, arm's-length information exchanges, discussions and negotiations in an effort to resolve the Derivative Claims (defined below in ¶ 1.4).  During this period, the parties undertook highly detailed discussions regarding corporate governance and compliance issues during multiple face-to-face and telephonic meetings with Settling Defendants' Counsel, Counsel for the SLC,

senior management (including the highest level compliance executives) within Lilly, Plaintiffs' Counsel and Plaintiffs' expert.  The Settling Parties also sought the assistance and expertise of retired United States Magistrate Judge Edward A. Infante in mediation of the Derivative Claims.

F.      As the result of these efforts, the Settling Parties have agreed to settle the Derivative Claims on the terms and conditions set forth herein.

**THE SETTLING DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY**

G.      The Settling Defendants have denied and continue to deny each and every one of the claims and contentions alleged in the Derivative Actions and Demand Letters.  The Settling Defendants also have denied and continue to deny all allegations that Lilly has suffered damage by or as a result of the conduct alleged in the Derivative Claims with respect to the Settling Defendants.  In order to eliminate the burden, expense, and risks inherent in the litigation, the Settling Defendants have determined that it is desirable that the Derivative Claims be settled in the manner and upon the terms and conditions set forth herein.

H.      Neither this Stipulation, nor any of its terms or provisions, nor entry of the Judgment (defined below in ¶ 1.9), nor any document or exhibit referred or attached to this Stipulation, nor any action taken to carry out this Stipulation, is, may be construed as or may be used as evidence of the validity of any of the Released Claims (defined below in ¶ 1.16) or an admission by or against the Settling Defendants of any fault, wrongdoing or concession of liability whatsoever.

I.      Neither this Stipulation nor the attached exhibits shall be offered or received into evidence in any action or proceeding in any court or other tribunal for any purpose whatsoever other than to enforce the provisions of this Stipulation, except that this Stipulation and the attached exhibits may be filed as evidence of the Settlement or in any action against the Released Parties

(defined below in ¶ 1.17) to support a defense of *res judicata*, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense.

### THE DERIVATIVE CLAIMS AND THE BENEFITS OF SETTLEMENT

J.       Based on their review and analysis of the relevant facts, allegations, defenses, and controlling legal principles, as described above, the Settling Parties believe that the Settlement set forth herein confers substantial benefits upon, and is in the best interests of, Lilly and its shareholders.  The Settling Parties have agreed to settle pursuant to the terms and provisions of this Stipulation after considering, *inter alia*, the substantial benefits that Lilly will receive.

K.       Although Plaintiffs believe that the Derivative Claims have substantial merit, Plaintiffs and Plaintiffs' Counsel recognize and acknowledge the expense and length of time that would be required to prosecute the Derivative Claims through trial and appeal.  Plaintiffs and Plaintiffs' Counsel have also taken into account the uncertain outcome and the risks of litigating the Derivative Claims, as well as the difficulties and delays inherent in such litigation.

L.       The Settling Parties acknowledge that the Derivative Claims have been filed, commenced, and prosecuted by the Plaintiffs and defended by the Settling Defendants in good faith and with adequate basis in fact and law under Federal Rule of Civil Procedure 11, and that the Derivative Claims are being voluntarily released and settled based on the advice of counsel.

M.       Plaintiffs, Settling Defendants and the SLC have conducted extensive arm's-length negotiations over an extended period of time and have reached agreement regarding certain corporate governance provisions related to, among other things, the Company's management structure; compliance and risk management and medical/safety organizations, policies and procedures; and oversight of these matters by Lilly's Board of Directors.  Certain of the provisions are enhancements to prior governance practices; others provide for adoption of certain governance

reforms, and others are commitments to maintain in place current governance practices.  Plaintiffs and the Settling Defendants acknowledge and agree that the Derivative Claims filed by the Plaintiffs, and the negotiations leading to this Settlement, were a substantial factor in the decisions by the Company to adopt, implement, enhance and/or maintain the corporate governance provisions set forth in Exhibit A.  The corporate governance provisions provide a substantial benefit to the Company, including in the prevention and detection of potential violations of law, regulation and Company policy.

NOW, THEREFORE, without any admission or concession on the part of Plaintiffs of any lack of merit of the Derivative Claims whatsoever, and without any admission or concession on the part of the Settling Defendants as to the merits of the Derivative Claims or as to any liability or wrongdoing whatsoever, IT IS HEREBY STIPULATED AND AGREED, by and among the Settling Parties, through their respective counsel, that, subject to the approval of the Court, in consideration of the mutual agreements set forth herein, the Released Claims shall be finally and fully compromised, settled, and released and the Derivative Claims shall be dismissed with prejudice:

## 1.    DEFINITIONS

As used in this Stipulation, the following terms have the meanings specified below:

1.1.    "Agreed Upon Term" means the term of the obligations expressed in the Agreement on Corporate Governance Terms attached hereto as Exhibit A.  The Agreed Upon Term shall be from the date the Court enters Judgment approving the Settlement until three years after Judgment is entered.

1.2.    "Demand Letters" means the letters sent by shareholders N.A. Lambrecht, Dr. Jamie Lambrecht, Doris Staehr and Jeffrey P. Jannett to the Board demanding the Company take

legal action against certain members of the Board and senior management for alleged breaches of fiduciary duty.

1.3.    "Derivative Actions" means the actions captioned *Lambrecht, et al. v. Taurel, et al.*, C.A. No. 1:08-cv-0068-DFH-TAB (S.D. Ind.) and *Zemprelli vs. Taurel et al.*, C.A. No. 1:08-cv-0854-SEB-TAB (S.D. Ind.); *Waldman v. Taurel, et al.*, C.A. No. 08-cv-560 (E.D.N.Y), *Robbins v. Taurel, et al.*, C.A. No. 08-cv-1471 (E.D.N.Y.) and *City of Taylor General Employees Retirement System v. Taurel, et al.*, C.A. No. 08-cv-1554 (E.D.N.Y.); and *Solomon v. Taurel, et al.*, Cause No. 49D12 08 03PL013729 and *Staehr v. Taurel, et al.*, Cause No. 49DO2 08 03CT013786, pending in the Marion County Superior Court, Indiana.

1.4.    "Derivative Claims" means the claims asserted or encompassed in the Derivative Actions and the Demand Letters.

1.5.    "Effective Date" means the date upon which the Judgment approving the Settlement in accordance with this Stipulation becomes Final as a matter of law and is no longer subject to appellate review.

1.6.    "Lilly Shareholders" means any Persons (other than Lilly) who owned Lilly common stock as of the Record Date.

1.7.    "Final" means the latest of:  (a) the expiration of the time for the filing or noticing of any motion for reconsideration or appeal of the Judgment; (b) the final affirmance of the Judgment on an appeal or after reconsideration, the expiration of the time for a petition, or a denial of any petition, to review the affirmance of the Judgment on appeal, or, if such petition is granted, the final affirmance of the Judgment following review pursuant to that grant; or (c) the final dismissal of any appeal from the Judgment or the final resolution of any proceeding to review any appeal from the Judgment without any material change to the Judgment.  Any proceeding or order,

7

or any appeal or petition for a review of a proceeding or order, pertaining solely to any application for or award of attorneys' fees or expenses shall not in any way delay or preclude the Judgment from becoming Final.

1.8.    "Individual Defendants" means Sidney Taurel, John C. Lechleiter, Sir Winfried Bischoff, J. Michael Cook, Franklyn G. Prendergast, Kathi P. Seifert, George M.C. Fisher, Alfred G. Gilman, Martin S. Feldstein, J. Erik Fyrwald, Karen N. Horn, Ellen R. Marram, Sir John Rose, Charles E. Golden, Steven C. Beering, August M. Watanabe, Linda Lay, Alva O. Way, Randall L. Tobias, J. Clayburn Laforce, Jr., Alan Breier, Charles M. Beasley, Jr., Gary D. Tollefson, Simon N.R. Harford, and Gerhard N. Mayr.

1.9.    "Judgment" means the Final Order and Judgment entered by the Court in a form substantially similar to the Proposed Final Order and Judgment attached hereto as Exhibit B.

1.10.    "Notice Administrator" means The Garden City Group ("GCG").

1.11.    "Person" means an individual, business or legal entity, including any corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and their spouses, heirs, predecessors, successors, representatives, or assignees.

1.12.    "Plaintiffs" means N. A. Lambrecht, Dr. Jaime Lambrecht, Jeffrey P. Jannett, Linda A. Waldman, Aaron Soloman, the City of Taylor General Employees Retirement System, Doris Staehr, Laurie G. Robbins, and Edward Zemprelli.

1.13.    "Plaintiffs' Counsel" means any counsel who have appeared on behalf of any of the Plaintiffs in the Derivative Actions or with respect to the Demand Letters.

1.14.   "Preliminary Approval Order" means the order entered by the Court in a form substantially similar to the Proposed Preliminary Approval Order attached hereto as Exhibit C.

1.15.   "Record Date" means February 12, 2010.

1.16.   "Released Claims" means any and all claims, demands, rights, remedies, causes of action or liabilities, whether based on federal, state, local, statutory, common or foreign law or any other law, rule, regulation, or principle of equity, whether known or unknown, including without limitation Unknown Claims (defined below in ¶ 1.25), whether suspected or unsuspected, whether contingent or non-contingent, whether accrued or unaccrued, whether or not concealed or hidden, whether factual or legal, and for any remedy whether at equity or law, that were or that could have been asserted through the Record Date against the Released Parties in the Derivative Actions or the Demand Letters, or by any Lilly Shareholder claiming in the right of, or on behalf of Lilly, arising out of, relating to or based upon, directly or indirectly, in any way, any of the facts, allegations, transactions, events, occurrences, acts, disclosures, statements, omissions, failures to act, or matters set forth, referred to, or alleged in the Derivative Actions and/or the Demand Letters.  By operation of the Judgment, the Releasing Parties shall have waived any and all provisions, rights, and benefits conferred by California Civil Code § 1542 and by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code § 1542 (*see* ¶ 1.25 below).

1.17.   "Released Parties" means all Settling Defendants, and each and all members of their families, parent entities, affiliates, or subsidiaries, and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries and assigns.

9

1.18.   "Releasing Parties" means the Plaintiffs (individually, and derivatively on behalf of Lilly), Lilly and the Lilly Shareholders, and each and all members of their families, parent entities, affiliates, or subsidiaries, and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries, and assigns, and all Persons acting in concert with any of the aforementioned persons and entities.

1.19.   "Settlement" means the agreement made and entered into by and among the Settling Parties and set forth in this Stipulation.

1.20.   "Settlement Hearing" means the hearing the Settling Parties will request that the Court hold after distribution of the Settlement Notice in order to consider and determine, among other things, whether the Settlement should be approved, whether Judgment should be entered dismissing the Derivative Actions with prejudice, and whether Plaintiffs' Counsel's requested attorneys' fees and expenses should be awarded.

1.21.   "Settlement Notice" means the notice of the Settlement that will be distributed under the Preliminary Approval Order, substantially in the form attached hereto as Exhibit D.

1.22.   "Settling Defendants" means, collectively, the Individual Defendants and nominal defendant Lilly.

1.23.   "Settling Parties" means Plaintiffs and Settling Defendants.

1.24.   "Summary Notice" means the summary form of notice to be published pursuant to the Preliminary Approval Order, substantially in the form attached hereto as Exhibit E.

1.25.   "Unknown Claims" means any Released Claims that any Releasing Party does not know or suspect to exist in his, her, its favor at the time of the release of the Released Parties that,

if known by him, her, or it might have affected his, her, or its settlement with, and release of, the

Released Parties, or might have affected his, her, or its decision not to object to this Settlement,

including claims based on the discovery of facts in addition to or different from those which he,

she, or it now knows or believes to be true with respect to the Released Claims.  The Settling

Parties further agree that the Released Claims constitute an express waiver of all rights and

protections afforded by California Civil Code § 1542 and all similar federal, state or foreign laws,

rights, rules, or legal principles.  Section 1542 states:

> A general release does not extend to claims which the creditor does not know or
> suspect to exist in his favor at the time of executing the release, which if known by
> him must have materially affected his settlement with the debtor.

The Releasing Parties shall be deemed by operation of the Judgment to have acknowledged that

the release of Unknown Claims was separately bargained for and is a key element of the

Settlement.

**2.      SETTLEMENT OF THE DERIVATIVE ACTIONS**

In settlement of and as a result of the Derivative Claims, the Settling Defendants agree,

subject to the Court entering Judgment approving this Settlement, to each of the following:

2.1.    Corporate Governance and Compliance Relief.  For the Agreed Upon Term, Lilly

will maintain its commitment to the effective implementation of the provisions set forth in the

Agreement on Corporate Governance Terms attached as Exhibit A hereto, including the Product

Safety and Medical Risk Management Core Objective and the Compliance Core Objective and to

the Board oversight functions related thereto.

2.2.    Funding:

a.      Lilly agrees that for the Agreed Upon Term it will commit from its treasury

funds as are necessary to implement the provisions set forth in Exhibit A attached hereto; and

b.      If, during the Agreed Upon Term, the Chief Ethics and Compliance Officer at Lilly wishes to seek additional funding for compliance-related expenditures, he or she shall be permitted at his or her option to petition directly the Board or an appropriate committee of the Board that such funding be included in or covered by business plans and budgets that are approved by the Board or such committee.

2.3.    Term of Agreement.  Any and all forward-looking provisions of this Settlement, including all of the provisions set forth in Exhibit A hereto, shall terminate three years after Judgment is entered.  Subject to Board approval as necessary, Lilly shall reassess the processes implemented under the Agreement after three years to determine whether to continue or modify them.

2.4.    None of the terms, agreements or modifications set forth in paragraphs 2.1 and 2.2 or Exhibit A shall be deemed to be an admission that Lilly's prior corporate procedures or governance were deficient.

## 3.      PRELIMINARY APPROVAL, NOTICE ORDERS, AND SETTLEMENT HEARING

3.1     Promptly following the execution of this Stipulation by all Settling Parties, the Settling Parties shall submit this Stipulation, together with its Exhibits, to the Court, and shall apply for entry of a Preliminary Approval Order, substantially in the form of Exhibit C attached hereto, that:  (a) preliminarily approves the Settlement set forth in this Stipulation; (b) sets a date for the Settlement Hearing; (c) approves the form and content of the Settlement Notice and the Summary Notice; and (d) preliminarily enjoins the Releasing Parties from commencing, instituting, or prosecuting any of the Released Claims.

3.2     The Notice Administrator shall provide the Settlement Notice to Lilly Shareholders via first class mail within five (5) days following entry of the Preliminary Approval Order.  The

Settlement Notice shall advise Lilly Shareholders of the terms of the Settlement of the Derivative Claims, the time and date of the Settlement Hearing, and Plaintiffs' Counsel's request for attorneys' fees and reimbursement of expenses.  The Settlement Notice shall be substantially in the form attached hereto as Exhibit D.  The Notice Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit E, to be published once in *The Wall Street Journal* not later than ten (10) days following entry of the Preliminary Approval Order.

3.3     The Settling Defendants shall be responsible for paying reasonable costs incurred in connection with the administration of the Settlement, including distribution of the Settlement Notice and the publication of the Summary Notice, in an amount not to exceed $350,000 except to the extent costs in excess of that amount result from a difference in the number of notices estimated by the Notice Administrator versus the number actually mailed.

3.4     The Settling Parties shall request that, after notice of the Settlement is made and the time for objections past, the Court hold a Settlement Hearing to consider and determine: (a) whether to approve the Settlement; (b) whether Judgment should be entered dismissing the Derivative Claims with prejudice, each party to bear his, her, or its own costs; (c) whether permanently to bar and enjoin the Releasing Parties from litigating any of the Released Claims against any of the Released Parties; and (d) whether to approve an award of attorneys' fees and reimbursement of expenses for Plaintiffs' Counsel.

## 4.     RELEASES AND BAR

4.1     Upon the Effective Date, each of the Releasing Parties on behalf of himself, herself, and/or itself, and each and all members of his, her and/or its families, parent entities, affiliates, or subsidiaries, and each and all of his, her and/or its respective past, present, or future officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal

representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries and assigns shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims as against the Released Parties; and will be forever barred and enjoined from commencing, instituting, or prosecuting any of the Released Claims.

4.2     Upon the Effective Date, each of the Settling Defendants, on behalf of himself, herself, and/or itself and each and all members of his, her and/or its families, parent entities, affiliates, or subsidiaries, and each and all of his, her and/or its respective past, present, or future officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries and assigns shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Releasing Parties and Plaintiffs' Counsel from all claims or demands relating to, arising out of, or connected with the institution, prosecution, assertion, settlement, or resolution of the Derivative Actions and/or the Released Claims.

4.3     Pending the Judgment becoming Final, the Releasing Parties are barred and enjoined from commencing, prosecuting, instigating, continuing, or in any way participating in the commencement or prosecution of any action asserting any Released Claims against any of the Released Parties or challenging the Settlement other than in this action in accordance with the procedures established by the Court (the "Injunction"). If any action is taken by any Releasing Party in violation of the Injunction, Plaintiffs, if requested, shall join in any motion and shall otherwise use their reasonable best efforts to effect a withdrawal, dismissal, transfer or stay of such action.

14

4.4     If any Settling Defendant files, commences, prosecutes, intervenes in, or otherwise participates in, any subsequent action or proceeding against the Released Parties, or asserts any claims (including claims for contribution or indemnity) against the Released Parties in any subsequent action or proceeding, nothing in paragraph 4.1 shall be deemed to have released claims, if any, that the Released Parties may have against any Settling Defendant relating in any way to the subject matter of that subsequent action or proceeding.

## 5.     PLAINTIFFS' COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND REQUEST FOR INCENTIVE AWARDS TO PLAINTIFFS

5.1     Plaintiffs' Counsel will apply to the Court for an award of attorneys' fees in the amount of $8,750,000, inclusive of expenses.  This amount was the subject of extensive negotiations only after the other terms of the Settlement were reached.  The negotiations as to an award of attorneys' fees and expenses took place in mediation presided over by retired Federal Magistrate Judge, the Honorable Edward M. Infante.  The Company will not oppose the request of Plaintiffs' Counsel.   Lilly will cause to be paid such award, as is approved by the Court, to Plaintiffs' Counsel within ten (10) business days of the receipt of notice from Plaintiffs' Counsel of the Effective Date.  Such notice will be made in accordance with ¶ 7.16 of this Stipulation to the Counsel for Lilly listed therein (the "Notice of Effective Date").  In the event the Judgment is appealed, no later than three months after notice of the appeal, Lilly will cause to be deposited the fee award as approved by the Court into one or more interest bearing accounts.  The approved fee award plus all interest earned following deposit into the interest bearing account(s) will be paid to Plaintiffs' Counsel within ten (10) business days of the receipt of the Notice of Effective Date.  In the Notice of Effective Date,  Plaintiffs' Counsel will provide Lilly payment and delivery instructions.  Payment may be made by check or wire transfer.  Neither Lilly nor any other Released Party shall have any obligation with respect to Plaintiffs' Counsel's fees and/or expenses

beyond the amounts awarded by the Court in response to the application for fees and expenses agreed to in this paragraph 5.1.

5.2     Plaintiffs' Counsel may also apply to the Court for the payment of incentive awards to named Plaintiffs in an aggregate amount not to exceed $35,000.00, to be paid from any award of attorneys' fees.

5.3     The Settling Defendants, Lilly, and their directors' and officers' insurers shall have no obligations or liability with respect to the apportionment or distribution of any attorneys' fees or expenses or of any incentive payments awarded by the Court.

5.4     No order of the Court, or modification or reversal on appeal of any order of the Court, concerning the amount or allocation of attorneys' fees or expenses, or the payment of incentive awards to named Plaintiffs referenced in paragraphs 5.1 and 5.2, shall constitute grounds for cancellation or termination of this Stipulation or prevent the Judgment from becoming Final.

5.5     Except as otherwise expressly provided in paragraphs 3.3, 5.1 and 5.2, the Settling Parties shall bear their own attorneys' fees and costs incurred in connection with the Derivative Claims and Settlement.

6.     **CONDITIONS OF SETTLEMENT; EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION**

6.1     The Settling Parties, each in his, her, or its sole discretion, shall have the right to terminate the Settlement and this Stipulation by providing written notice to counsel identified in Section 7.16 below of his, her, or its election to do so within thirty (30) days of:  (a) the Court declining to enter in any material respect the proposed Preliminary Approval Order attached hereto as Exhibit C; (b) the Court refusing to approve the Stipulation or any material part of it; (c) the Court declining to enter in any material respect the Proposed Final Order and Judgment attached hereto as Exhibit B; or (d) the date upon which the Final Order and Judgment is modified or

16

reversed in any material respect on appeal or by writ, except that, with respect to subparagraphs (b), (c) and (d) of this paragraph, an award of attorneys' fees, inclusive of expenses, or incentive award to Plaintiffs that is different than the amount requested by Plaintiffs shall not be grounds for termination or cancellation of the Settlement.

6.2     Pending the Judgment becoming Final, the Settling Parties agree that all provisions, requirements and terms set forth in paragraph 8 of the Settlement Process Agreement dated March 20, 2008, shall remain in full force and effect.

6.3     In the event that the Settlement is not approved by the Court, or is terminated for any reason, paragraph 8 of the Settlement Process Agreement dated March 20, 2008, shall remain in effect, the Settling Parties shall be restored to their respective positions in the Derivative Actions immediately prior to the signing of this Stipulation, and all negotiations, proceedings, documents prepared, and statements made in connection with the Settlement shall be without prejudice to the Settling Parties, shall not be deemed or construed to be an admission by any Settling Party of any act, matter or proposition, and shall not be used in any manner or admissible for any purpose in any of the Derivative Actions or in any other action or proceeding.

6.4     In the event that the Settlement is not approved by the Court, or is terminated for any reason, the terms and provisions of this Stipulation shall have no further force and effect with respect to the Settling Parties, and shall not be used or admitted in any of the Derivative Actions or in any other action or proceeding for any purpose, and any judgments or orders entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated.

## 7.     MISCELLANEOUS PROVISIONS

7.1     The Settling Parties:  (a) acknowledge that it is their intent to consummate the terms and conditions of this Stipulation; and (b) agree to cooperate to the extent reasonably necessary to

effectuate and implement all terms and conditions of this Stipulation, to exercise their best efforts to accomplish the foregoing terms and conditions of this Stipulation, and to obtain preliminary and final approval of the Settlement.

7.2     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes among themselves with respect to the Derivative Claims.   The Settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim, demand, or defense.   While the Settling Defendants deny that the claims and contentions advanced in the Derivative Actions and Demand Letters are meritorious, the Settling Defendants agree that the Derivative Claims were filed in good faith and are being settled voluntarily after negotiating at arm's-length and in good faith after consultation with competent legal counsel.   The Settling Parties agree not to assert in any forum that the Derivative Claims were brought, commenced or prosecuted by Plaintiffs or defended by the Settling Defendants in bad faith.   The Settling Parties shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Derivative Claims.

7.3     The Settling Parties agree that the terms of this Settlement, including the amount of attorneys' fees and reimbursement of expenses, were negotiated at arm's-length and in good faith by the Settling Parties with the assistance of a mediator, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel.

7.4     This Stipulation and its exhibits constitute the entire agreement among the Settling Parties concerning the settlement of the Derivative Claims, and no representations, warranties, or inducements have been made by any party hereto concerning this Stipulation and its exhibits other than those contained and memorialized in such documents.

7.5     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

7.6     All the agreements made and orders entered in the Derivative Actions concerning the confidentiality of documents and information and all agreements made by Plaintiffs' Counsel concerning the confidentiality of documents and information shall survive this Stipulation and Settlement.  Within thirty  (30) days after payment of any attorneys' fees and expenses awarded by the Court pursuant to or as a result of this Stipulation, Plaintiffs' Counsel shall return to Counsel for the Settling Defendants all confidential material produced or otherwise transmitted to them in paper form or by disc, and shall represent that Plaintiffs' Counsel have used their best efforts to destroy or delete all such materials transmitted electronically.   The failure of any Plaintiffs' Counsel acting in good faith to fully comply with this provision shall not constitute a material breach of the terms of this Stipulation.

7.7     Any written or oral public statement regarding the Settlement contained in this Stipulation shall be limited to the terms set forth in this Stipulation and to statements that the Derivative Claims were resolved to the mutual satisfaction of the Settling Parties.  None of the Settling Parties shall make any public statement regarding the terms of this Stipulation or the Settlement contained herein that is critical of or disparages the Settlement or the conduct of the Settling Parties.

7.8     This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

7.9     This Stipulation may be executed in one or more counterparts, including by facsimile and/or electronically scanned counterparts.   All executed counterparts, including

facsimile and/or electronically scanned counterparts, shall be deemed to be one and the same instrument.

7.10    This Stipulation shall be binding upon, and inure to the benefit of, the Settling Parties and their respective successors, assigns, heirs, spouses, marital communities, executors, administrators, and legal representatives.

7.11    This Stipulation shall not be construed more strictly against any Settling Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Settling Parties, it being recognized that this Stipulation is the result of arm's-length negotiations between the Settling Parties and all Settling Parties have contributed substantially and materially to the preparation of this Stipulation.

7.12    All Persons executing this Stipulation and any of the Exhibits hereto, or any related settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

7.13    The waiver by any party of any breach of this Stipulation shall not be deemed or construed as a waiver of any other breach, whether prior or subsequent to, or contemporaneous with, the execution of this Stipulation.

7.14    Without affecting the finality of the Judgment entered in accordance with this Stipulation, the Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

7.15   The rights and obligations of the Settling Parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of Indiana without giving effect to any state's choice-of-law principles.

7.16   Any notice required by this Stipulation shall be submitted in writing and delivered by overnight mail, electronic mail, facsimile, or in person as follows:

Karen L. Morris
Morris and Morris LLC
  Counselors At Law
4001 Kennett Pike, Suite 300
Wilmington, DE 19807
kmorris@morrisandmorrislaw.com
fax: (302) 426-0406

Richard D. Greenfield
Greenfield & Goodman LLC
780 Third Avenue, 48th Floor
New York, NY 10017
whitehatrdg@earthlink.net
fax: (410) 745-4158

Co-Chairs of Plaintiffs' Executive Committee

Robert L. Hickok
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103
hickokr@pepperlaw.com
fax: (215) 981-4750

Counsel for Eli Lilly & Company

Teri Cotton Santos
Assistant General Counsel
Litigation
Eli Lilly and Company
Lilly Corporate Center
Indianapolis, Indiana 46285
tcsantos@lilly.com
fax: (317) 277-6534

Counsel for Eli Lilly & Company


IN WITNESS WHEREOF, the Settling Parties have caused this Stipulation to be executed, by their duly authorized attorneys.

Dated: February 25, 2010                    s/ Karen L. Morris
                                             Karen L. Morris
                                            MORRIS AND MORRIS LLC
                                               COUNSELORS AT LAW
                                            4001 Kennett Pike, Suite 300
                                            Wilmington, DE 19807
                                            Phone: (302) 426-0400
                                            Fax: (302) 426-0406
                                            kmorris@morrisandmorrislaw.com


                                             s/ Richard Greenfield
                                            Richard  Greenfield
                                            GREENFIELD & GOODMAN LLC
                                            780 Third Avenue, 48th Floor
                                            New York, NY 10017
                                            Phone: (410) 745-4149
                                            Fax: (410) 745-4158
                                            whitehatrdg@earthlink.net

                                            *On behalf of All Plaintiffs in All
                                            Derivative Actions and Demand Letters*


                                            s/ Robert L. Hickok
                                            Robert L. Hickok
                                            PEPPER HAMILTON LLP
                                            3000 Two Logan Square
                                            Eighteenth and Arch Streets
                                            Philadelphia, PA  19103
                                            Phone: (215) 981-4000
                                            Fax: (215) 981-4750
                                            hickokr@pepperlaw.com

                                            *Counsel for All Defendants*

22