UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

| | | |
|---|---|---|
| N.A. Lambrecht and Jeffrey P. Jannett, | : | |
| Derivatively on Behalf of Nominal | : | |
| Defendant Eli Lilly & Company | : | |
| | : | |
| Plaintiffs, | : | C.A. No. 1:08-cv-0068-WTL-TAB |
| | : | |
| v. | : | |
| | : | |
| Sidney Taurel, John C. Lechleiter | : | |
| Sir Winfreid Bischoff, J. Michael Cook, | : | |
| Franklyn G. Pendergast, Kathi P. Seifert, | : | |
| George M. Fisher, Alfred G. Gilman, | : | JURY TRIAL DEMANDED |
| Martin S. Feldstein, J. Erik Fyrwald, | : | |
| Ellen R. Marram, Sir John Rose, | : | |
| Charles E. Golden, Steven C. Beering, | : | |
| August M. Watanabe, Linda Lay, | : | |
| Randall L. Tobias and | : | |
| J. Clayburn LaForce, Jr., | : | |
| | : | |
| Defendants | : | |
| | : | |
| -and- | : | |
| | : | |
| ELI LILLY & COMPANY, | : | |
| | : | |
| Nominal Defendant. | : | |

_____

**DECLARATION OF KAREN L. MORRIS IN SUPPORT OF
PETITION FOR ATTORNEYS' FEES, INCLUSIVE OF EXPENSES**

I, Karen L. Morris, hereby declare:

1.       I am a partner in the firm of Morris and Morris LLC Counselors At Law.  I am

submitting this declaration in support of the application for an award of attorneys' fees, inclusive

of expenses, in connection with the services rendered in the course of the litigation of the

Derivative Actions (as defined in the Stipulation of Settlement, executed on February 25, 2010 (Docket # 69-1) on behalf of Nominal Defendant Eli Lilly & Co.  I am over the age of 21, have personal knowledge of the facts stated herein, and, if sworn as a witness, can competently testify to the facts stated herein.

2.     My firm has incurred a total of 5,167.00 hours from the inception of the Derivative Actions through November 30, 2009.  The hourly rates and lodestar of attorneys and paralegals from my firm principally responsible for the litigation of the Derivative Actions are as follows:

| NAME | HOURLY RATE | LODESTAR |
|------|-------------|----------|
| Karen Morris (P) | $635.00 | $ 968,375.00 |
| Patrick Morris (P) | $585.00 | $539,955.00 |
| Richard Lindsey (SA) | $515.00 | $1,304,366.25 |
| Diane Kravitz (PL) | $165.00 | $30,731.25 |

3.     The total lodestar for the work performed by these counsel and paralegals equaled $2,843,427.50.  Since November 30, 2009, my firm has expended $143,675.00 in lodestar in connection with the preliminary and final approval process.  This information was prepared from contemporaneous time records regularly prepared and maintained by my firm.  Time spent in preparing this declaration in support of my firm's application for fees and reimbursement of expenses, and any other time related to billing or periodic time reporting, has not been included in this chart summarizing my firm's hours and lodestar.

4.     My firm incurred a total of $348,414.33 in unreimbursed expenses in connection with the prosecution of the Derivative Actions, broken down into categories in the chart attached hereto as Exhibit 1.

5.     The expenses incurred pertaining to this case are reflected on the books and records of my firm.  These books and records are prepared from expense vouchers and check

records prepared in the normal course of business, and are an accurate record of the expenses incurred.

      6.    With respect to the standing of counsel in this case, attached hereto as Exhibit 2 is a brief biography of my firm.

      I declare under the penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.

      Executed on April 1, 2010, at Wilmington, Delaware.

Karen L. Morris

# EXHIBIT 1

**ELI LILLY**
**SHAREHOLDER DERIVATIVE ACTION**
**MORRIS AND MORRIS LLC**
**EXPENSE CATEGORY BREAKDOWN**
**PERIOD:  Inception – March 2010**

| CATEGORY | TOTAL |
|---|---|
| Experts and consultants | 320,039.93 |
| Court Costs | |
| Transcripts | |
| IT and Document Management Costs | 6,117.92 |
| Conference call services | |
| Plane, train, taxi, and hotel | 8,745.20 |
| Meals | 3,029.43 |
| Copying Costs | 1,068.79 |
| FedEx/UPS/Messenger service/postage | 861.35 |
| Long Distance Telephone | 1,467.16 |
| On-line research | 7,084.55 |
| | |
| **TOTAL** | **348,414.33** |

# EXHIBIT 2

**MORRIS  and  MORRIS LLC**
**COUNSELORS AT LAW**
4001 Kennett Pike, Suite 300
Wilmington, DE  19807
(302) 426-0400
(302) 426-0406 (f)

Morris and Morris LLC Counselors at Law is a law firm whose practice is concentrated principally in representative and class action litigation, including derivative, securities and antitrust litigation.  The firm represents consumers and investors in class actions and is active in major litigations pending in federal and state courts throughout the United States.

The Partners:

Karen L. Morris is a graduate of Yale University (B.A. 1980, M.A. 1980) and of the Duke University School of Law (J.D. 1983).  Thereafter, Ms. Morris served as a law clerk to the late Daniel L. Herrmann, then Chief Justice of the Supreme Court of the State of Delaware.  Ms. Morris was a founding partner in 1991 of Morris and Morris, the predecessor firm to the present firm of Morris and Morris LLC Counselors At Law.  Ms. Morris previously practiced with the firm of Fried, Frank, Harris, Shriver & Jacobson, New York, New York, from 1984 through 1990.  While at Fried, Frank, she was principally involved in accounting and securities fraud litigation, both civil and criminal, complex tax litigation, and litigation in connection with merger and acquisition transactions.  Ms. Morris served on the Permanent Lawyers Advisory Committee to the Federal District Court for the District of Delaware between 1992 and 1994.  Ms. Morris is Co-Chair of the ABA Subcommittee on Governance Issues in Litigation and Investigations.  Ms. Morris is admitted to the Bars of the States of New York and Delaware; the United States District Courts for the Southern District of New York, Eastern District of New

1

York and the District of Delaware; United States Court of Appeals for the Third Circuit Court; and the United States Tax Court.

Patrick F. Morris is a graduate of West Point (B.S. 1978) and of the Duke University School of Law (J.D. 1983), where he graduated Order of the Coif.  Mr. Morris has been a member of the Firm since November 1994.  Prior to joining the Firm as an associate in 1991, Mr. Morris served as a Major in the Office of the Judge Advocate General with the Department of the Army.  Mr. Morris is a member of the Bars of the States of Florida and Delaware.

R. Michael Lindsey is a graduate of Penn State University (B.A. 1985, with Honors in English Literature) and of the Dickinson School of Law (J.D. 1988, magna cum laude).  Prior to his association with Morris and Morris in 2003, Mr. Lindsey practiced in the fields of corporate litigation and white collar crime with the law firm of Skadden, Arps, Slate Meagher & Flom from 1989 to 1998, and in the fields of corporate, securities and commercial litigation, including with Bouchard Margules & Friedlander, PA, a firm specializing in Delaware Chancery Court corporation litigation.  Mr. Lindsey is a member of the Board of Directors of the Delaware Center for Justice.  Mr. Lindsey is a member of the Delaware Bar.

Our Practice:

The practice of the Firm has been substantially devoted to the field of representative litigation, both class and derivative, in the fields of securities, antitrust, and limited partnership representation.  Illustrative of the cases in which the Firm has participated are the following:

(a)    Pendolphia v. Becherer et al., Civil Action No. 01CV1421 (D.N.J.) ("Schering-Plough Corporation").  The Firm was co-counsel in this shareholder derivative action against the directors of Schering-Plough seeking to recover damages for defendants' breach of fiduciary duties.  The complaint alleged defendants intentionally or recklessly ignored repeated warnings

that essential Company production facilities were plagued by severe and pervasive manufacturing and quality control system breakdowns and failures.  Further, the complaint alleged defendants intentionally or recklessly authorized and/or permitted the Company to engage in improper sales practices which operated as a fraud upon federal and state governmental authorities, thereby exposing the Company to a series of ongoing federal and state investigations and jeopardizing its all-important eligibility to participate in Medicaid and other government programs.  By Order dated January 14, 2008, the District Court approved the settlement of the derivative claims providing for substantial corporate governance and compliance reforms at the Company.

(b)     TimeWarner, Inc. Derivative Litigation, Civil Action No.  04-CV-9316 (S.D.N.Y.).  The Firm was Co-Lead Counsel in a derivative litigation against the directors and certain officers of Time Warner, Inc., that alleged these defendants breached their fiduciary duties to shareholders of the combined Time Warner/America Online company in connection with wrongdoing related to improper and/or illegal recording of millions of dollars of sham profits purportedly earned on multiple advertising agreements.  The Southern District of New York, by Memorandum Opinion dated September 6, 2006, approved a settlement of these derivative claims which entailed, among other relief, substantial monetary and corporate governance benefits to the company.    The S.D.N.Y. expressly found that the corporate governance and compliance changes "will not only help deter the type of misconduct underlying Plaintiffs' claims, but may enhance investor confidence by ensuring that the Company maintains a healthy governance structure."  *In re AOL Time Warner Shareholder Derivative Litigation* ("AOL"), 2006 U.S. Dist. LEXIS 63260 at *12 (S.D.N.Y. September 6, 2006).

(c)      <u>Pierce v. Ellison</u>, No. 416147 (Ca. Super. Ct.).  The Firm was co-counsel in this
shareholder derivative action against certain current and/or former directors and/or officers of
Oracle Corporation.   The complaint alleged that the defendants intentionally or recklessly
disregarded known or obvious internal warnings regarding declining revenue growth trends of its
critical license business in the first two months of its third quarter, fiscal year 2001, in the face of
express representations to the contrary.   The complaint also charged certain defendants,
including Oracle's Chairman and Chief Executive Officer, Larry Ellison, of selling millions of
shares of Oracle stock while in possession of this non-public, negative financial information.  As
alleged in the complaint, this illegal scheme earned the defendants hundreds of millions of
dollars of profits in violation of their fiduciary duties of loyalty as Oracle directors and/or
officers.   Plaintiffs contended that defendants' misconduct exposed Oracle to substantial
financial harm.  Among other things, the complaint demanded that the insider trading defendants,
at a minimum, disgorge their illegal gains.   Plaintiffs survived a motion to dismiss this
complaint, and subsequently settled the claims for a total of $100 million, to be paid by Ellison
over a five year period to fund charitable contributions by Oracle, as well as $21 million
separately paid by Ellison to fund attorneys' fees and expenses.

(d)      <u>Charlotte Kruman, et al. v. Christie's International PLC, et al.</u>, Civil Action 00
Civ. 0996 (LAK) (S.D.N.Y.).  The Firm was one of the principle counsel in this federal antitrust
class action litigation brought on behalf of buyers and sellers in auctions held outside of the
United States by the Christie's and Sotheby's Auction Houses between 1993 and 2000 (for
buyers) and 1995 and 2000 (for sellers).  Plaintiffs' Sherman Act antitrust claims were originally
dismissed by the District Court due to a finding of lack of subject matter jurisdiction based upon
the then-current interpretation of the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a.

Plaintiffs' counsel were successful in their appeal to the Second Circuit, causing that Circuit to be the first in the country to interpret the Foreign Trade Antitrust Improvements Act to provide jurisdiction to United. States courts for alleged antitrust violations that occur outside of the United States.  On June 2, 2003, the Court approved a settlement providing for the payment of $40 million for the benefit of class members.

(e)     BP Propane Direct Purchaser Antitrust Litigation, Master Case File No. 1:06-CV-3621, filed in the United States District Court for the Northern District of Illinois.  The Firm is one of Class Counsel in this direct purchaser antitrust action alleging that BP Products North America ("BPNA"), by and through its employees, attempted to and did monopolize the supply of Mont Belvieu, Texas TET Propane in, among other possible times, early 2004.  Plaintiffs contended that this conduct resulted in, among other things, market manipulation and substantial damages to market participants who purchased propane directly from BPNA and from others at prices tied to Mont Belvieu TET and/or non-TET propane pricing.  The Court approved a $52 Million settlement by Order dated May 26, 2009.

(f)     In re Salomon Treasury Litigation, Consolidated Civil Action No. 91 CIV 5471 (S.D.N.Y.).  The Firm had a leading role in this complex federal securities fraud, anti-trust and RICO class action arising from the highly publicized 1991 manipulation and "squeeze" of the cash and financing markets for a number of issues of United States Treasury Securities, and the subsequent public disclosures by Salomon Brothers of its having violated Treasury Department rules in submitting bids in auctions of Treasury Securities.  On July 26, 1994, the District Court approved a settlement of the action with all but one of the named defendants that provided a $100 million fund for distribution to the Class.  The Firm was a major participant in all aspects of the litigation, including, among other things, the preparation and drafting of two amended and

consolidated complaints, numerous pretrial motions, the conduct of approximately 150 days of deposition testimony by party and non-party witnesses, the review and management of hundreds of thousands of pages of documents, numerous hearings before the Court, and the negotiation of the settlement with defense counsel.  The Firm was also in charge of all expert discovery and expert damage analysis, which proved critical to understanding the highly technical Treasury Securities markets and the methods by which plaintiffs alleged defendants were able to manipulate and squeeze segments of those markets.  The Firm successfully briefed and argued two discovery motions resulting in reported decisions: In re Salomon Bros. Treasury Litig., [1992-93 Transfer Binder] Fed. Sec. L. Rptr. (CCH) ¶97,254 (S.D.N.Y. 1992) aff'd sub nom., In re Steinhardt Partners, L.P., 9 F.3d 230 (2d Cir. 1993)(rejecting an exception to work-product waiver for voluntary submissions to governmental regulatory and law enforcement agencies); and In re Salomon Bros. Treasury Litig., [1993-1994] Fed. Sec. L. Rptr. (CCH) ¶98,119 (S.D.N.Y. 1994)(rejecting claims of quasi-governmental privileges for information obtained from private sources and compelling the Federal Reserve Bank of New York to produce documents).  In re Steinhardt Partners, L.P. involved an issue of first impression in the Second Circuit.

     (g)    In re Metropolitan Life Derivative Litigation, Consolidated 93 Cv 9035 (JSM) (S.D.N.Y.).  The Firm served as sole lead counsel in this derivative action brought on behalf of the policyholders of Metropolitan Life Insurance Company.  The District Court approved a settlement resulting in a recovery for the company of $4 million in cash and $6.4 million in return compensation benefits in addition to non-cash benefits affecting corporate governance.

     (h)    In Re Boeing Corporation Derivative Litigation.  Illinois Circuit Court, Cook County Chancery Division, Consolidated Civil Action Nos. 03-CH-15039 and 03-CH-16301.

The Firm was one of the counsel leading the derivative litigation pending in Chancery Division of the Circuit Court in Chicago. The Firm originally pursued a Delaware Books and Records process addressed to ferreting out facts regarding Boeing's history of ethical misconduct, including misuse of proprietary competitor information in the government contract bidding process, alleged wrongdoing involving the hiring of former government contracting personnel and multiple government contract awards. The Books and Records process was ultimately coordinated with Demand Futility cases. By Memorandum Order dated August 15, 2006, the Court approved a settlement of the derivative claims which provided for far-reaching and comprehensive governance and compliance reforms, directed particularly at the responsibilities and obligations of the board of directors. The settlement also required Boeing's commitment of $29 million in treasury funds to support the compliance reforms agreed upon pursuant to the settlement. In approving the settlement, the Court referred to the benefits these reforms and the treasury commitment provided to the Corporation and concluded the reforms went towards addressing a central issue in the litigation, the extent to which the audit committee of the corporation was not sufficiently proactive or informed as the wrongdoing was alleged to have unfolded.

(i) In re Bankers Trust Derivative Litigation, 94 Civ 7926 (PKL) (S.D.N.Y.). The Firm served as Co-Chair of the Executive Committee in the derivative action brought on behalf of the shareholders of Bankers Trust New York Corporation. The action alleged the directors breached their fiduciary duties to their corporate shareholders by failing to properly oversee and monitor the company's sales practices and procedures, particularly regarding the sale of high risk derivative instruments, resulting in substantial injury to the company and its shareholders. The

District Court approved a settlement for a cash recovery of $8.5 million together with significant changes to the Bank's monitoring responsibilities.

(j)     <u>Fescina v. CVS Corporation, et al.</u>, Civil Action No. 04-12309-JLT (D. Mass.) The Firm was principal counsel in this ERISA class action brought against the directors and certain officers of CVS Corporation alleging they breached their fiduciary duties under ERISA to participants in the Company's 401(k) Plan and Employee Stock Ownership Plan (ESOP) (the "Plans") by using employer and employee contributions to the Plans to purchase CVS stock at a time when that stock was an unsuitable and imprudent investment for the Plans.  Plaintiff further alleged that defendants violated ERISA by misrepresenting to Plan participants the operational and financial status of CVS and, consequently, the true value of its stock.   The Firm was responsible for the settlement of this action, which included payment of $3 million to Plan participants, as well as the adoption by the Company of substantial governance changes that directly affected Plan fiduciaries' duties and responsibilities in the oversight and administration of the Plans.

(k)     <u>Mutual Fund Multi-District Litigation</u>, MDL Civil Action Nos. 04-15862 and 15863 (D. Maryland).   The Firm is lead counsel in a derivative action against the parent companies of Alliance Capital arising out of allegations regarding late trading and market timing. The Firm has played a central role in both the management and litigation of this derivative case.

(l)     <u>In re Guidant Corporation ERISA Litigation</u>, Master Docket No. 1:05-cv-1009-LJM-TAB, pending in the United States District Court for the Northern District of Indiana, Indianapolis Division.  The Firm is Co-Lead Counsel in this ERISA class action brought against certain directors and officers of the former Guidant Corporation, alleging that these defendants breached their fiduciaries duties to the Company's ERISA plan and plan participants by, *inter*

*alia*, continuing to hold and to allocate new shares of Guidant common stock during a period in which they knew or should have known that such stock was an unsuitable and imprudent investment for the plan.  By Order dated, September 15, 2006, the District Court dismissed Plaintiffs' claims based on lack of standing.  By Order dated June 5, 2007, the Seventh Circuit overturned this dismissal and remanded the case back to the District Court.  Plaintiffs' claims are presently subject to a renewed motion to dismiss.

(m)    In re: Oxford Health Plans, Inc. Derivative Litigation, MDL Dkt. No. 01-CV-1222 (CLB) (S.D.N.Y.).  The Firm was counsel in this derivative litigation against the directors of Oxford Health Plans, alleging their intentional or reckless failures to maintain controls in the face of multiple "red flags" regarding such critical issues as revenue, medical expenses payable, membership growth, and premium receivables.  These failures acted to deprive the Company of timely and valid financial information and resulted in its violation of numerous insurance regulations and laws, causing substantial financial and reputational harm to Oxford.  The Firm was actively involved in all phases of the litigation, including briefing the motion to dismiss and discovery.  On June 12, 2003, the Court approved a settlement of this case providing for payment of $13.7 million in cash and substantial corporate governance changes at the Company.

(n)    UnumProvident et al.(Derivative Litigation), MDL Civil Action No. 03-MD-1552 (E.D. Tenn.).  The Firm is Co-Lead Counsel in this shareholder derivative action arising out of allegations of wrongdoing related to the management of UnumProvident's disability insurance policies and certain financial disclosures.  This alleged wrongdoing was the subject of extensive regulatory investigations.  The derivative action is directed to the conduct of the Board and certain of the Company's senior officers.  By Final Order and Judgment dated February 24, 2010,  the District Court approved the settlement of the derivative claims, recognizing the role of

9

the derivative claims in the Company's ability to obtain $30 million in insurance proceeds, and providing for substantial corporate governance reforms at the Company.

(o)    McCall, et al. v. Scott, et al., Civil Action No. 3-97-0838 (M.D. Tenn.).  The Firm was co-counsel in this derivative suit brought against the directors of Columbia/HCA alleging that their failure to assure the Company had in place adequate corporate information and reporting systems and compliance controls led to pervasive and systemic billing fraud, principally against Medicare, Medicaid and Champus.  These reckless or intentional failures on the defendants' part resulted in one of the most extensive federal fraud investigations ever undertaken against a company.  In 1998, the District Court granted defendants' motion to dismiss.  Plaintiffs were successful in having this decision overturned, in part, by the Sixth Circuit Court of Appeals, and remanded back to the District Court (February 12, 2001).  The Firm  played a significant role in briefing the opposition to the motion to dismiss, both before the District Court and the Sixth Circuit, and was actively involved in all aspects of the discovery process.  This case settled for $14 million in cash and substantive corporate governance changes at the Company.

(p)    Leodore J. Roy v. Independent Order of Foresters, Civil Action No. 97-CV-6225 (JCL) (D.N.J.).  The Firm was Co-Lead Counsel in this federal class action, brought on behalf of a class of individuals who purchased life insurance issued in the United States by the Independent Order of Foresters ("IOF") between 1984 and 1998. Plaintiff alleged the IOF engaged in a series of fraudulent and deceptive practices in the sales and maintenance of life insurance policies it issued during the Class Period.   The Firm was instrumental in the investigation and drafting of the complaint, and was actively involved in discovery (including the review of approximately 400,000 pages of documents) and in almost two years of settlement

negotiations.  Under the terms of the settlement, members of the Class were eligible for relief valued at approximately $114 million.  The United States District Court for the District of New Jersey approved the settlement on August 3, 1999.

(q)     <u>Sidney Neidich, et al., v. Geodyne Resources, et al.</u>, Civil Action Nos. 94-05286, 94-059799 (S.D.N.Y.).  The Firm served as Co-Lead Counsel in the action.  The Firm brought its action in the District Court of Harris County, District of Texas, on behalf of purchasers of PaineWebber/Geodyne Energy Income Limited  Partnership units.  The litigation alleged that PaineWebber engaged in fraud and breached its fiduciary duties to its clients by selling oil and gas limited partnership units as safe and suitable investments for small and conservative investors.  The action subsequently was consolidated for pre-trial and discovery purposes with a similar action in the United States District Court for the Southern District of New York alleging, among other counts, fraud and RICO claims.  The Firm directed a team of over twenty lawyers to review and analyze over 350,000 pages of documents, coordinated an intensive analysis of that discovery with industry consultants, deposed numerous witnesses and actively participated in settlement negotiations.  On March 1, 1997, the Court approved a settlement providing for a total recovery of $200 million, $125 million in cash and additional benefits with a present value of $75 million.

(r)     <u>Orman, et al., v. America Online, Inc., et al.</u>, Civil Action No. 97-264-A (E.D.Va.).  The Firm was Co-Lead Counsel in this action alleging that defendants defrauded investors by making material misrepresentations about certain accounting practices at AOL and about the expected average value of its subscribers. The Firm played a critical role in drafting a second amended complaint and in successfully defeating a motion to dismiss that complaint. Following the motion to dismiss, the Firm took a leading role in extensive motion practice and

discovery (including the review and analysis of over 250,000 pages of documents and nearly a gigabyte, i.e., the equivalent of nearly 1,000 3.5" floppy diskettes of data and electronic documents, in only six months) and in preparing the case for trial. The parties agreed on May 20, 1998, to settle the claims for $35 million.

(s)     Schaffer v. National Medical Enterprises, Inc., Civil Action No. 93-5224 TJH (BX) (C.D.Cal.).   The Firm was co-lead counsel in this federal securities fraud class action brought on behalf of stockholders of National Medical Enterprises, Inc. ("NME").   Plaintiffs alleged the defendants failed to disclose the impact that governmental investigations and civil claims by insurance carriers arising from widespread fraudulent business practices in NME's psychiatric hospital division would likely have on the Company's financial position and prospects.   While formal discovery was stayed pending a hard fought two-year motion to dismiss, the Firm engaged in a nationwide investigation, assembling information concerning the allegedly fraudulent conduct.   After successfully defeating the motion to dismiss, the Firm was actively involved in client depositions and formal discovery.   On June 2, 1998, the Court approved a settlement providing for a total recovery of $11,650,000.

(t)     In re Merrill Lynch, et al., Securities Litigation, Civil Action No. 94-5343 (DRD) (D.N.J.).   The Firm led an effort to effect a recovery for a class of investors who purchased or sold NASDAQ securities through three large brokerage houses without knowing the brokerage houses executed the trades using the National Best Bid and Offer prices ("the NBBO") and, further, without the brokerage houses telling the customers of the reasonable availability of better prices through Instinet and SelectNet.   The three brokerage houses executed trades for themselves and favored customers on the same superior systems without disclosing they were doing so to ordinary investors.   After the District Court granted summary judgment on a limited

record against the plaintiffs, see 911 F. Supp. 754 (D.N.J. 1995), the Firm appealed to the United States Court of Appeals for the Third Circuit.  A three-judge panel of the Third Circuit affirmed the District Court in an opinion subsequently withdrawn and not reported.  The Firm then successfully petitioned for rehearing before the Third Circuit *en banc*.  Following the *en banc* hearing before ten of the then twelve judges of the Third Circuit (two judges recused themselves) and further argument and briefing before the Third Circuit, the Third Circuit reversed the summary judgment by a vote of 10 to 0.  See 135 F.3d 266 (3rd Cir. 1998).  The United States Supreme Court denied defendants' petition for certiorari.  See 119 S.Ct. 44 (Oct. 12, 1998).  On remand the District Court permitted the plaintiffs to add parties and extend the class period but denied plaintiffs' motion for class certification (November 8, 1999).  The plaintiffs then moved the Third Circuit for review of the denial pursuant to new Rule 27(f) (November 24, 1999).  The Third Circuit granted plaintiffs' petition for review, but ultimately upheld the District Court's opinion on other grounds.

   (u) <u>Frank, et al. v. CenTrust Bank, et al.</u>, Consolidated Civil Action Nos. 90-0084-Civ-Atkins, 90-0196-Civ-Atkins, 90-0683-Civ-Atkins and 90-0850-Civ-Atkins (S.D.Fla.).  The Firm served as Co-Lead Counsel in this federal securities fraud class action brought on behalf of investors in CenTrust Savings Bank, N.A.  This suit arose from the "Savings and Loan" scandal of the 1980's and involved a complex web of accounting fraud in which the Bank, its officers and its outside advisors covered up a large cache of junk bonds and a high-stakes trading strategy used to inflate the bank's balance sheet.  In the course of litigating this action, the Firm took a major role in organizing the review of over 6 million pages of documents.  The Firm played the lead role in securing compensation for investors from the Drexel Bankruptcy proceedings and

the Milken Compensation fund proceedings and in settling claims against other defendants which provided a total recovery of approximately $18.5 million.

(v)   <u>In re Columbia Gas Securities Litigation</u>, Consolidated Civil Action No. 91-357 (D.Del.).  The Firm was sole lead counsel in this federal securities fraud class action brought on behalf of investors in Columbia Gas System, Inc., in connection with the defendants' alleged misrepresentations of excess gas cost contracts which led to the company's bankruptcy in July 1991.  The Firm conducted the preparation of highly technical financial analysis and damage assessments in conjunction with various expert consultants.  The Firm also conducted intensive negotiations with defense counsel involving, in addition to issues of liability and damages, legal research and evaluation as to the impact of the company's bankruptcy on the pending class action.  The Firm drafted a comprehensive Consolidated Amended Class Action Complaint and negotiated all aspects of the settlement the District Court approved on November 2, 1995, providing for a recovery of $36.5 million for the Class.

(w)   <u>In re Paramount Communication, Inc., Shareholders Litigation</u>, Del.Ch., Consolidated Civil Action No. 13117.  The Firm was Co-Lead Counsel in this class action which was brought on behalf of Paramount Communications, Inc. shareholders in connection with a proposed merger of Viacom, Inc. and Paramount Communications, Inc.   In successfully obtaining a preliminary injunction against the proposed merger and particular "lock-up" terms contained therein, the Firm was directly involved in coordinating and conducting extensive document and deposition discovery on an expedited basis, had primary responsibility for legal research and brief writing, and was extensively involved in preparation for oral arguments at hearings before both the Delaware Court of Chancery and the Delaware Supreme Court. Plaintiffs were successful both in obtaining an order enjoining a merger Paramount's board of

directors had approved without having taken adequate care to maximize shareholder value, QVC Network, Inc. v. Paramount Communications, Inc., Del. Ch., 635 A.2d 1245 (1993), and in defending that result before the Delaware Supreme Court, QVC Network, Inc. v. Paramount Communications, Inc., Del. Supr., 637 A.2d 34 (1994). As a direct consequence of the litigation, Paramount's board of directors conducted an auction of the company that ultimately resulted in a new merger agreement, the terms of which benefitted Paramount's public stockholders by hundreds of millions of dollars over the amount they would have received had the proposed merger originally challenged by the shareholder plaintiffs been consummated.

(x)     In re C&S/Sovran Shareholders Litigation, Civil Action No. 1:91-CV-1354-RHH (N.D.Ga.) The Firm was principal Co-Lead Counsel in this securities class action brought on behalf of Citizens & Southern Bank ("C&S") shareholders allegedly defrauded as a result of the merger between C&S and Sovran Bank, as well as on behalf of open market purchasers of C&S/Sovran shares following the merger. The Firm was principally responsible for briefing papers successfully opposing both defendants' motion to dismiss and motion for summary judgment, which presented issues of first impression regarding the proper measure of valuating the purchase price for a security under Section 11(e) of the Securities Act of 1933 within the context of a stock-for-stock merger. In addition, the Firm principally drafted the First and Second Amended and Consolidated Class Action Complaints, and was responsible for negotiating all aspects of the $9.5 million settlement the District Court approved in 1994.

(y)     In re Medical Care America, Inc. Securities Litigation, Consolidated Civil Action No. 3-92-CV-1996-R (N.D.Tex.). The Firm was a member of the Plaintiffs' Executive Committee in this federal securities fraud class action brought on behalf of Medical Care America, Inc. shareholders seeking damages for alleged misleading disclosures concerning the

financial condition of Critical Care America and Medical Care International made in connection with their 1993 merger into a new company, Medical Care America.  On December 16, 1994, the parties reached a $60 million settlement agreement through a Court-ordered mediation.  The Texas District Court in April 1996 approved the settlement.  In addition to participating in the mediation process, the Firm participated in extensive party and non-party document discovery.  The Firm also had primary responsibility for researching and briefing plaintiffs' successful opposition to defendants' motion to dismiss, and participated in the drafting of the Amended and Consolidated Complaint and preliminary notices to the Class.

(z)    <u>In re Frank B. Hall & Co. Shareholders Litigation</u>, Del. Ch., Consolidated Civil Action No. 12659.  The Firm served on the Executive Committee in this action in which plaintiffs' counsel were able to secure an approximately $2 million increase in the price paid to shareholders in a merger with a majority shareholder.

(aa)    <u>In re Sound Advice Securities Litigation</u>, Case No. 92-6457-Civ-King (S.D.Fla.).  The Firm was Co-Lead Counsel in this federal securities fraud class action brought on behalf of the shareholders of Sound Advice, Inc. in connection with the company's alleged fraudulent failure to disclose material information concerning its financial condition and results.  The Firm had primary responsibility for drafting an Amended and Consolidated Complaint, conducting an extensive investigation into allegations of intentional wrongdoing within the company, and litigating a motion to compel production of an internal company review of alleged accounting improprieties.  The Firm worked with co-lead counsel in extensive negotiations with the company, its insurers and its outside accountants, ultimately resulting in a $2.765 million settlement for the Class.

16

       (bb)    <u>In re The Polifly Sec. Litig.</u>, Civil Action No. 90-854 (MTB) (D.N.J.).  The Firm was lead counsel in this federal securities fraud class action on behalf of the stockholders of Polifly Financial Corporation in connection with Polifly's alleged failure to properly disclose its accounting for the market value of various real estate assets securing loans made by the company.  The Firm worked closely with expert real estate financial experts and, after extensive negotiations with defense counsel, successfully settled the action on behalf of the class for $4.135 million.