UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| N.A. Lambrecht and Jeffrey P. Jannett, Derivatively on Behalf of Nominal Defendant Eli Lilly & Company | : : : : | |
| Plaintiffs, | : : | C.A. No. 1:08-cv-0068-WTL-TAB |
| v. | : : | |
| Sidney Taurel, et al., | : : | |
| Defendants, | : : | |
| -and- | : : | |
| ELI LILLY & COMPANY, | : : | |
| Nominal Defendant. | : : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**
**<u>FINAL APPROVAL OF PROPOSED SETTLEMENT</u>**

I.     INTRODUCTION

Defendants Sidney Taurel, John C. Lechleiter, Sir Winfried Bischoff, J. Michael Cook, Franklyn G. Prendergast, Kathi P. Seifert, George M.C. Fisher, Alfred G. Gilman, Martin S. Feldstein, J. Erik Fyrwald, Ellen R. Marram, Sir John Rose, Charles E. Golden, Steven C. Beering, August M. Watanabe, Linda Lay, Randall L. Tobias, and J. Clayburn Laforce, Jr., (the "Derivative Defendants") and Nominal Defendant Eli Lilly and Company ("Lilly" or "the Company") (collectively "Defendants") submit this Memorandum of Law in support of the final approval of the proposed settlement of this derivative action and the six other related derivative actions (collectively, the "Derivative Actions").  The terms and conditions of the settlement are set forth in the Stipulation of Settlement, which was executed by the parties and filed with the Court.

The settlement of the Derivative Actions is not an admission of wrongdoing on the part of any of the Defendants.  To the contrary, the Derivative Defendants have denied and continue to deny each and every one of the claims and contentions alleged in the Derivative Actions.  The Derivative Defendants also have denied and continue to deny all allegations that Lilly has suffered damage by or as a result of the conduct alleged in the Derivative Actions.

Although they dispute the merits of the Derivative Actions, the Defendants have entered into the Stipulation of Settlement in order to eliminate the burden, expense, and risks inherent in the litigation.  In addition, the terms of the Stipulation of Settlement motivated the Derivative Defendants to settle, as they provide Lilly with corporate governance provisions that will strengthen Lilly's long-established compliance program and ensure that it remains an industry leader in areas of corporate compliance and enterprise risk management.

The settlement is the result of extensive arm's-length negotiation among counsel experienced in derivative shareholder litigation, with the assistance of an independent and

experienced mediator.  As demonstrated below, the settlement is fair, reasonable and adequate to Lilly and its shareholders.  The Defendants therefore respectfully request that the Court approve the proposed settlement.

## II.     THE SETTLEMENT

The Stipulation of Settlement ("Settlement") establishes certain corporate governance provisions with respect to various aspects of the Company.  These provisions are set forth in detail in the Corporate Governance Terms, which is attached as Exhibit A to the Settlement.  Dkt. Entry. No. 69-2.  The corporate governance provisions relate to the Company's management structure, compliance and risk management and medical/safety organizations, policies and procedures, and the oversight of these matters by Lilly's Board of Directors.  *See* Dkt. 69-1 (Stip. of Settlement ¶ M).  Some provisions call for enhancements to prior governance practices, certain provisions require the adoption of certain governance reforms, and other provisions require commitments by Lilly to maintain in place current governance practices.  *Id.*

## III.    STANDARD FOR APPROVING DERIVATIVE SETTLEMENTS IN THE SEVENTH CIRCUIT

It is well-established that courts strongly favor settlement of disputed claims. *William v. First Nat'l Bank*, 216 U.S. 582, 595 (1910).  This judicial preference for settlement is especially strong in complex and expensive litigation like derivative shareholder actions.  *See, e.g.*, *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983).  In determining whether to approve a settlement, "the Court's inquiry 'is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate.'"  *Isby*, 75 F.3d at 1196 (citation omitted).  To assist courts in making this inquiry, the Supreme Court and the Seventh Circuit have established a set of factors for evaluating a settlement for final approval.

As a threshold matter, a derivative settlement providing for therapeutic benefits to the subject company must provide a "substantial benefit" to that company. *See Mills v. Electric Auto Lite Co.*, 396 U.S. 375, 397-98 (1970).  In addition, the Seventh Circuit established a multi-factor test for evaluating settlements for final approval:  (1) the complexity, expense, and length of the litigation; (2) the stage of the proceedings; (3) the strength of plaintiffs' case as compared to the settlement offer; and (4) the opinion of competent counsel.[1]  *Freeman v. Berge*, 68 Fed.Appx. 738, 742-43 (7th Cir. 2003).  In this case, the "substantial benefit" standard and these four factors militate in favor of approving the proposed settlement.

A.  **The Settlement is Lawful, Fair, Reasonable and Adequate**

1.  **The Settlement Confers Substantial Benefit to Lilly and Its Shareholders**

A therapeutic settlement confers substantial benefit to the subject corporation and its shareholders where the settlement calls for corporate governance enhancements that will prevent or deter the wrongdoing alleged in the underlying litigation.  *See, e.g.*, *In re Schering-Plough Corp. S'holders Deriv. Litig.*, No. 01-1412, 2008 WL 185809, at *4 (D.N.J. Jan. 14, 2008).  The Stipulation of Settlement is a therapeutic settlement as it provides for enhancements to Lilly's management structure, compliance and risk management and medical/safety organizations, policies and procedures, and oversight of these matters by Lilly's Board of Directors.  *See* Stip. of Settlement ¶ M.  The substantial benefit accorded by these enhancements includes the prevention and detection of potential violations of law, regulation, and Company policy.  *See id.*  The Settlement will also substantially benefit Lilly and its shareholders by ending this costly and burdensome litigation.

---

[1] A fifth factor, the "amount of opposition to settlement among affected parties," is not yet known because the time for filing objections has not ended.

### 2. Complexity, Expense, and Likely Duration of Litigation

The complexity, expense, and likely duration of the Derivative Actions favor approval of the Settlement. The Derivative Actions center on alleged fiduciary duty breaches in connection with alleged improper marketing of certain Lilly drugs. *See* Stipulation of Settlement ¶ A. Derivative litigation is a complex area of legal practice. *See Granada Investments, Inc. v. DWG Corporations*, 962 F.2d 1203, 1205 (6th Cir. 1992). Moreover, the subject matter of the alleged fiduciary breaches, to wit, off-label marketing of pharmaceuticals, compounds the complexity of the Derivative Actions. A jury would have been required to learn and understand the history of the drugs at issue, including the numerous scientific studies regarding the safety and efficacy of such drugs.

The anticipated duration of the litigation and its accompanying expense also weigh in favor of approving the proposed settlement. Absent a settlement, the Derivative Defendants would have mounted a vigorous defense, entailing significant motion practice and extensive trial preparation. Given the complexity of the Derivative Actions, the trial would likely take several weeks and involve numerous fact witnesses from Lilly, as well as participation on the part of other Lilly personnel. The trial would necessarily cause a major interruption to Lilly's business, which in turn could possibly harm shareholders.

### 3. The Stage of the Proceedings

The "stage of the proceedings" factor also supports final approval of the Settlement. The parties undertook extensive investigation and document analysis. Plaintiffs' Counsel reviewed and analyzed approximately 85,000 pages of documents as part of their analysis of the merits of the alleged underlying wrongdoing. Stipulation of Settlement ¶ D. These documents were also relevant to Plaintiffs' Counsel's analysis of corporate governance

and compliance issues. *Id.* Plaintiffs' Counsel also retained three experts to assist them in their analysis. *Id.*

In addition, the parties researched applicable law with respect to the claims asserted by Plaintiffs and Derivative Defendants' potential defenses. Further, the parties engaged in numerous face-to-face and telephonic meetings during which time they engaged in highly detailed discussions regarding corporate governance reforms. *Id.* ¶ E. The parties also participated in mediation before retired U.S. Magistrate Judge Edward A. Infante. *Id.* ¶ F.

The parties' extensive document production and review, research, meetings, mediation, and briefing provided them with the opportunity to understand the strengths and weaknesses of their claims and defenses. Thus, the parties have properly and sufficiently developed this case prior to entering into the Settlement, and this factor favors final approval of the Settlement.

### 4. The Strength of Plaintiffs' Case as Compared to the Settlement Offer

The Plaintiffs face a risk of not prevailing in this litigation in the face of the Derivative Defendants' defenses. A comparison of this risk to the substantial benefit afforded by the Settlement supports a finding that the Settlement should be approved.

The Derivative Actions are subject to a number of defenses – both procedural and substantive. The lawsuits are arguably procedurally defective for three reasons. First, the suits were filed after the applicable statute of limitations expired. Under applicable law, the statute of limitations begins to run as soon as there is sufficient information in the public domain suggesting that there is a breach of fiduciary duty. *Hurco Cos. Inc. v. Kuehne & Nagel Inc.*, No. IP 00-0697-C-T/G, 2001 WL 1386077, at *3 (S.D. Ind. Sept. 28, 2001)). A decision from a New York federal district court established that the Plaintiffs were on notice of the alleged fiduciary duty breaches no later than March of 2005. *See In re: Eli Lilly & Co. Securities Litigation*, 07-

-5-

CV-1310 (E.D.N.Y.) (filed Mar. 28, 2007).  Thus, the Plaintiffs had until March of 2007 to file their suits.  *See* Indiana Code § 34-11-2-4; *Shriner v. Sheehan*, 773 N.E.2d 833, 844-46 (Ind. Ct. App. 2002) (minority shareholder's breach of fiduciary duty claim based on excessive compensation paid to majority shareholder in a close corporation is subject to a two-year statute of limitations).  Because the Derivative Actions were filed in 2008, they are arguably untimely.

The second procedural weakness is that certain Plaintiffs failed to make a demand on the Company in accordance with Federal Rule of Civil Procedure 23.1.[2]  Failure to do so renders the complaints invalid and requires dismissal of the actions.  *See, e.g.*, *Kaster v. Modification Sys., Inc.,* 731 F.2d 1014, 1018 (2d. Cir. 1984).  The third procedural defect with the Derivative Actions is that they were premature because Lilly's Special Litigation Committee ("SLC") had not made a decision yet as to whether to pursue the alleged fiduciary duty violations on behalf of the Company.  *See In re Guidant S'holders Deriv. Litig*, 841 N.E.2d 571, 575-76 (Ind. 2006); Ind. Code §§ 23-1-32-2 ("Whether or not a demand for action was made, if the corporation commences an investigation of the charges made in the demand or complaint . . . the court may stay any proceeding until the investigation is completed.").

Moreover, as for the substance of the suits, the breach of fiduciary duty claims are subject to the business judgment rule defense, which provides the Derivative Defendants with a very strong defense.  *See In re Guidant Corp. S'holders Derivative Litig.*, No. 1:03 CV 955, 2006 WL 290524, at *7 (S.D. Ind. Feb. 6, 2006) (Indiana has a "strongly pro-management

---

[2] This argument applies to five of the seven derivative suits: *Waldman v. Taurel, et al.*, No. 08-CV-560 (E.D.N.Y.); *Robbins v. Taurel, et al.*, No. 08-CV-1471 (E.D.N.Y.); *City of Taylor General Employees Retirement Sys. v. Taurel, et al.*, No. 08-CV-1554 (E.D.N.Y.); *Solomon v. Taurel, et al.*, 49D12-0803-PL-013729 (Ind. Sup. Ct., Marion Co.); and *Zemprelli v. Taurel, et al.*, No. 1:08 CV 0854-SEB-TAB (S.D. Ind.)

-7-

version" of the business judgment rule, which "invests a board of directors with broad discretion in the management of the corporation in the operation of its business.") (citation omitted).

In light of the procedural and substantive defenses to the Derivative Actions, there is a real risk that the Plaintiffs would not prevail. Thus, the Settlement, which provides a substantial beneficial result for Lilly and its shareholders, should be approved.

### 5. The Opinion of Competent Counsel

Where plaintiffs' and defendants' counsel have extensive experience in derivative litigation and have engaged in thorough investigation and discovery, courts recognize the judgment of those experienced trial counsel in assessing the reasonableness of a proposed settlement. *See, e.g.*, *Freeman*, 68 Fed. Appx. at 743 (district court properly relied on the opinion of class counsel, a team of experienced and well-respected attorneys, who reached the agreement only after exhaustive negotiations and extensive discovery). Plaintiffs' Counsel and counsel for the Defendants have extensive experience in derivative shareholder litigation, have thoroughly vetted the facts and law of the Derivative Actions, and have concluded that the Settlement is the proper resolution of this matter. Moreover, counsel for the SLC, attorneys with significant experience in derivative litigation, have endorsed the Settlement. Accordingly, the "opinion of competent counsel" factor favors approval of the Settlement.

## IV. CONCLUSION

For all of the foregoing reasons, the Defendants respectfully request that the Court give final approval to the Stipulation of Settlement.

BAKER & DANIELS LLP


By: <u>s/Christopher G. Scanlon</u>
Christopher G. Scanlon (#1583-49)
Matthew T. Albaugh (#23293-49)
300 North Meridian Street, Suite 2700
Indianapolis, IN  46204
317-237-0300 telephone
317-237-1000 facsimile
chris.scanlon@bakerd.com
matthew.albaugh@bakerd.com

Robert L. Hickok
Michael E. Baughman
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4000 (telephone)
(215) 981-4750 (facsimile)
hickokr@pepperlaw.com
baughmanm@pepperlaw.com

*Attorneys for Defendants and Nominal Defendant Eli Lilly and Company*

## **CERTIFICATE OF SERVICE**

I certify that on April 1, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system:

| | |
|---|---|
| Peter T. Barbur<br>Duane L. Loft<br>Kyle W. Mach<br>Cravath Swaine & Moore LLP<br>pbarbur@cravath.com<br>dloft@cravath.com<br>kmach@cravath.com | Karen L. Morris<br>Patrick F. Morris<br>Morris & Morris LLC<br>kmorris@morrisandmorrislaw.com<br>pmorris@morrisandmorrislaw.com<br><br>Marc J.M. Moss<br>Marc J.M. Moss, Esq. |
| David C. Campbell<br>Bingham McHale LLP<br>dcampbell@binghammchale.com | mmoss@mosslawllc.com<br><br>James P. Strenski<br>Cantrell Strenski & Mehringer, LLP |
| Jan M. Carroll<br>Barnes & Thornburg LLP<br>jan.carroll@btlaw.com | jstrenski@csmlawfirm.com<br><br>Paul T. Warner<br>The Warner Law Firm |
| Richard D. Greenfield<br>Greenfield & Goodman LLC<br>whitehatrdg@earthlink.net | pwarner&Warner-law.net<br><br>Ann M. Caldwell<br>Caldwell Law Office LLC<br>acaldwell@classactlaw.com |

I further certify that a copy of the foregoing was sent by first-class mail, postage prepaid, to:

>Bruce G. Murphy
>Law Offices of Bruce G. Murphy
>265 Llwyds Lane
>Vero Beach, FL  32963


>s/Christopher G. Scanlon