UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| N.A. Lambrecht and Jeffrey P. Jannett, Derivatively on Behalf of Nominal Defendant Eli Lilly & Company | : : : : | |
| Plaintiffs, | : : | C.A. No. 1:08-cv-0068-WTL-TAB |
| v. | : : | |
| Sidney Taurel, John C. Lechleiter Sir Winfreid Bischoff, J. Michael Cook, Franklyn G. Pendergast, Kathi P. Seifert, George M. Fisher, Alfred G. Gilman, Martin S. Feldstein, J. Erik Fyrwald, Ellen R. Marram, Sir John Rose, Charles E. Golden, Steven C. Beering, August M. Watanabe, Linda Lay, Randall L. Tobias and J. Clayburn LaForce, Jr., | : : : : : : : : : : : | |
| Defendants | : : | |
| -and- | : : | |
| ELI LILLY & COMPANY, | : : | |
| Nominal Defendant. | : : | |

**PLAINTIFFS SUPPLEMENTAL**
<u>**MEMORANDUM OF LAW**</u>

Plaintiffs, by their undersigned counsel, submit this supplemental Memorandum of Law to respond to the questions posed by the Court by Order dated May 7, 2010 (Document # 94). In addition, in further response to the Court's question at the Final Settlement Hearing, plaintiffs inform the Court that all expert costs and expenses have now been paid in full.

1. *Florin* mandates the payment of a multiplier in this case. In common fund cases, the Seventh Circuit has "consistently directed district courts to 'do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time.'" *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). *See also Taubenfeld v. Aon Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). As the Court recognizes, *Florin v. Nationsbank of Georgia*, N.A., 34 F.3d 560 (7th Cir. 1994)("*Florin I*") mandates the payment of a risk multiplier in a common fund case undertaken by counsel on a contingent basis. This holding in *Florin I* is applicable here because (1) this case is "controlled by common fund principles," and (2) plaintiffs' counsel "had no sure source of compensation for their services." *Id.*, 34 F.3d at 565. Common fund principles apply here because this case is governed by the common benefit doctrine enunciated in *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 389-94 (1970), which is itself derived from, and based upon equitable common fund principles. Neither the fact that nominal defendant Lilly is paying the fee, nor the non-monetary nature of the relief renders *Florin I's* mandate of a multiplier inapplicable here. *See* discussion at ¶ 2 and ¶ 3 below.

In *Florin I,* the Seventh Circuit reversed the District Court's denial of a contingency risk multiplier. The central issue was whether the case was controlled by a fee-shifting statute, and therefore, by the Supreme Court's holding in *City of Burlington v. Dague*, 500 U.S. 557 (1992) or by "common fund principles." *Id.*, 34 F.3d at 563. In *Florin I*, plaintiffs alleged violations of

1

ERISA, a federal statute providing for fee-shifting, but the claims were settled by creation of a common fund. *Id.* In awarding attorneys' fees, the Seventh Circuit held that ERISA did not preclude application of common fund principles to a common fund settlement. *Id.*[1] Because the award of fees was controlled not by the fee-shifting statute, but instead by common fund principles, the Seventh Circuit held that *Dague*'s prohibition against a contingency risk enhancement was inapplicable. *Id.*, 34 F.3d at 363-64.

The *Florin I* opinion elucidates the fundamental difference between fee-shifting statutes and common fund principles. Both are exceptions to the generally applicable "American Rule" that each party bears its own attorneys' fees. The Seventh Circuit explained that "fee-shifting statutes were enacted for the purpose of encouraging the private prosecution of certain favored actions, by requiring *defendants who have violated plaintiffs' rights* to compensate plaintiffs for the costs they incurred to enforce those rights." *Florin I*, 34 F.3d at 362-363 (emphasis added). Such statutes shift a prevailing plaintiff's attorneys' fees to the defendant against whom judgment is obtained. "Courts may also make an exception to the American rule based on equitable doctrines, such as the 'common fund' ... doctrine," *Id.*, 34 F.3d at 563, which "is based on the equitable notion that not one plaintiff, but all 'those who have benefited from litigation should share its costs.'" *Id.*, quoting *Skelton v. General Motors Corp.*, 860 F.2d 250, 252 (7th Cir.1988), *cert. denied*, 493 U.S. 810 (1989). Under the "common fund" doctrine, a plaintiff's attorneys' fees are equitably spread among those who benefited from the attorneys' efforts.

2. <u>The award of attorneys' fees in this case is controlled by equitable "common benefit" principles, and the fact that Lilly is paying the fees as the nominal defendant is fully consistent with this analysis.</u> This is "a derivative suit, [in which] an individual shareholder seeks

---

[1] The question of whether statutory language or policy precludes application of common fund principles is irrelevant in the present case, because no statute is implicated here.

2

to enforce a right that belongs to the corporation." *In re Abbott Laboratories Derivative Shareholders Litigation*, 325 F.3d 795, 803 (7th Cir. 2003). *See also Kamen v. Kemper Financial Services, Inc.*, 500 U.S. 90, 95 (1991)(derivative form of action permits an individual shareholder to bring suit to enforce a corporate cause of action, as "a means to protect the interests of the corporation ... ."). Such actions are brought "in the name and on behalf of a corporation," and "any resulting recovery flows to the corporate coffers." *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 646 (7th Cir. 2006). The corporation is a defendant only nominally, and is substantively the real party in interest. *See, e.g.*, *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 572-574 (7th Cir. 1986) (derivative action cannot proceed where no defendant other than the nominal defendant corporation is subject to *in personam* jurisdiction, because nominal defendant is in reality the claimant and not a substantial defendant).

In derivative actions, "it is well settled that the counsel fees and litigation expenses incurred ... in vindicating a corporate claim for relief can be assessed against all the shareholders substantially benefited by means of an award against the corporation." *Bailey v. Meister Brau, Inc.*, 535 F.2d 982, 995 (7th Cir. 1976)(citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 389-94 (1970)); *see also Tipton v. Mill Creek Gravel, Inc.*, 373 F.3d 913, 922 (8th Cir. 2004)("Because shareholder derivative suits are brought on behalf of the corporation, courts reason that the corporation should pay for any benefit it receives as a result of the suit."). This rule of law is known as the "common benefit" doctrine. The Supreme Court has explained that the development of the common benefit doctrine "has been most pronounced in shareholders' derivative actions, where the courts increasingly have recognized that the expenses incurred by one shareholder in the vindication of a corporate right of action can be spread among all shareholders through an award against the corporation, regardless of whether an actual money

3

recovery has been obtained in the corporation's favor," *Mills*, 396 U.S. at 394.[2] The Seventh Circuit has described the common benefit doctrine as "an equitable, judicially created exception to the American Rule, which flows from the 'common fund' exception." *Gaffney v. Riverboat Services of Indiana, Inc.*, 451 F.3d 424, 466 (7th Cir. 2006); *see also Polonski v. Trump Taj Mahal Associates*, 137 F.3d 139, 145 (3rd Cir. 1998) (common benefit doctrine can be traced to the common fund rule).

Reflecting exactly the distinction between statutory fee shifting and equitable common fund cases that the Seventh Circuit highlighted in *Florin I*, the Supreme Court in *Mills* approved payment by the corporation of plaintiffs' attorneys' fees for therapeutic relief in a derivative action, explaining that pursuant to the common benefit doctrine "[t]o award attorneys' fees in such a suit to a plaintiff who has succeeded in establishing a cause of action is not to saddle the unsuccessful party with the expenses but to impose them on the class that has benefited from them and that would have had to pay them had it brought the suit." *Id.*, 396 U.S. at 396-397. Here, as in *Mills*, Lilly is funding the award of attorneys' fees *not* as an unsuccessful defendant, but rather under common benefit principles as the vehicle for spreading these costs to the ultimate beneficiaries of the litigation, its shareholders.

3.   <u>The common benefit doctrine applies even though the benefit conferred is non-monetary.</u> It is well-established under the common benefit doctrine that the benefit need not be pecuniary. *See, e.g.*, *Mills*, 396 U.S. at 626 ("The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fee could be paid does not preclude an award based on this [common benefit] rational."); *see also Gaffney,* 451 F.3d at 466 (under the

---

[2] The Supreme Court likened the payment of attorneys' fees under such circumstances to a common fund "in the sense that the court's jurisdiction over the corporation as nominal defendant made it possible to assess fees against all of the shareholders through an award against the corporation." *Mills*, 396 U.S. at 394-95.

common benefit doctrine, "th[e] benefit need not be pecuniary"); *Amalgamated Clothing and Textile Workers Union v. Wal-Mart Stores, Inc.*, 54 F.3d 69, 71 (2d Cir. 1995)(same); *Merola v. Atlantic Richfield Co.,* 515 F.2d 165, 169-170 (3rd Cir. 1975)("fees are awardable even though the benefit conferred is purely nonpecuniary in nature;"); *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1194 (6th Cir. 1974) ("the services performed by plaintiffs' attorneys justify an award of fees, even though no fund has been brought into court"). The Supreme Court held in *Mills* that plaintiffs' counsel were entitled to an award of attorneys' fees under common benefit principles despite the absence of a monetary fund, because "[t]o allow the [other shareholders] to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense." *Id.*, 396 U.S. at 392.

    4.    <u>The principles articulated in *Dague* and *Perdue v. Kenny A.* do not apply here.</u>
Neither *Dague* nor *Perdue v. Kenny A.*, No. 08-970, 2010 WL 1558980 (U.S. Apr. 21, 2010) is relevant to the determination of a reasonable fee award here because the rulings in both decisions are limited to fees awarded pursuant to fee shifting statutes. *See, e.g.*, *Dague*, 505 U.S. at 559; *Perdue,* 2010 WL 1558980 at *1669. The Seventh Circuit held that "*Dague*, by its terms, *applies only to statutory fee-shifting cases*, and its reasoning is largely based on the statutory language of fee-shifting provisions." *Florin I*, 34 F.3d at 564 (emphasis added). The present action is a common law breach of fiduciary duty case that does not involve any statute at all. This distinction is crucial. Even prior to *Dague* and *Florin*, the Seventh Circuit held that "when a court must decide whether to compensate attorneys for the risks they incurred in undertaking the litigation, the difference between fee-shifting and common fund arrangements is quite significant." *Skelton,* 860 F.2d at 253. Indeed, the Seventh Circuit has consistently reversed decisions limiting fee awards based on the "misappl[ication of] the principles that

5

govern fee shifting cases to [awards based on equitable common fund principles]." *Sutton*, 504 F.3d at 692; *Florin I*, 34 F.3d at 564 (in vacating denial of contingency multiplier, Seventh Circuit noted that District Court "seemed to regard this case as governed at least in part by statutory fee-shifting principles").

In *Dague,* the Supreme Court held that statutory language limiting fee awards against losing defendants to "prevailing parties" must be read to forbid compensating plaintiff's counsel for cases in which his clients do not prevail – the very function of a contingency enhancement. *See Dague,* 505 U.S. at 565. In *Florin I,* the Seventh Circuit held that "[i]n a common fund case, however, because compensation for risk is charged against the plaintiff class, defendants would not be forced to subsidize directly plaintiffs' attorneys' losing endeavors," *id.*, 34 F.3d at 565, and that "there is no injustice in requiring plaintiff class members to shoulder the burden of compensating counsel for prosecuting the class' case without any assurance of compensation." *Id.* As detailed above, this case, like *Florin I*, is governed by equitable common fund principles and not by a fee shifting statute. Lilly, as the nominal defendant, and through it, Lilly's shareholders, stand in the same position as the plaintiff class in *Florin I*, and are paying the fee not as a losing defendant in a fee shifting case being "forced to subsidize directly plaintiffs' attorneys' losing endeavors," but as the entity and group on whose behalf the case was brought and as the recipient of the benefits of the settlement created by the efforts of plaintiffs' counsel. Therefore, neither *Dague* nor *Perdue* governs, and the reasoning in *Florin I* is fully applicable.

5. <u>In addition to the contingent nature of the case, the factors the Court takes into account in assessing the reasonableness of a fee under the market rate doctrine further demonstrate the reasonableness of the fee sought here, inclusive of the multiplier, and should be considered by the Court</u>**.** The determination of a reasonable fee in a case governed by equitable

6

common fund principles is based on the market rate – what the attorney would have received from a paying client in a similar case, assessed *ex ante*. *See, e.g.*, *Synthroid*, 264 F.3d at 718; *Montgomery v. Aetna Plywood, Inc.,* 231 F.3d 399, 408 (7th Cir. 2000). The Seventh Circuit has identified multiple factors to assess the reasonableness of a fee under the market rate standard. As set forth in plaintiffs' Final Approval Brief (Document # 82, pp. 57-59), one of these factors is an assessment of the risk of nonpayment a firm agrees to bear, *see Synthroid*, 264 F.3d at 721, which, under a lodestar analysis, is captured in the multiplier. Other factors the Court applies when assessing the reasonableness of a fee under the market rate standard include the quality of the services rendered, the amount of work necessary to resolve the litigation, *see Synthroid*, 264 F.3d at 721, and fees awarded in similar cases, *see Taubenfeld*, 415 F.3d at 600. As discussed below, consideration of these factors fully supports the reasonableness of both the fee award sought, and the multiplier of approximately 1.25 reflected in that amount. *See* Final Approval Brief, p. 72.

In determining the size of the multiplier in the context of applying a lodestar analysis, and, consistent with the market rate standard**,** the Seventh Circuit has held that the "risk multiplier is an effort to mimic market forces." *Id*, 60 F.3d at 1247. The Seventh Circuit has directed that "the district court must attempt 'a retroactive calculation of the probability of success as measured at the beginning of the litigation.'" *Cook v. Neidert*, 142 F.3d 1004, 1013 (7th Cir. 1998). The multiplier selected "should, to the extent possible, be without regard to most developments during discovery and litigation because it is designed to reflect the riskiness of the case at the outset." *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991).[3] The Seventh

---

[3] *See, also*, *Skelton*., 860 F.2d at 258 (reversing district court's denial of a multiplier based on the fact the case settled early, stating "[t]he point at which plaintiffs settle with defendants … is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them"). Indeed, here, as set forth in Plaintiffs' Joint Attorney Declaration (Document # 83), ¶¶ 9, 56 and at oral argument (Transcript

7

Circuit has recognized that an unenhanced lodestar reflects what counsel would have been paid in a non-contingent fee case, and therefore, the lodestar, standing alone, under-compensates counsel in connection with contingent fee cases because it fails to compensate counsel for the risks undertaken at the inception of the litigation. *See, e.g.*, *Cook*, 142 F.3d at 1015 (unenhanced lodestar does not reflect "the fact that at the outset of the litigation, no matter how dazzling the array of legal talent or how many hours will eventually be logged, there is nonetheless the possibility of no recovery"). As set forth in the Final Approval Brief, plaintiffs here faced substantial risks, based both on the derivative nature of the claims at issue and the substantive defenses available to defendants. *See* Final Approval Brief, pp. 60-64. Derivative cases based on failure of oversight have long been recognized as among the hardest to prosecute. *Id.*, pp. 62-63.[4] In view of the substantial risks plaintiffs confronted at the outset of the litigation, the risk multiplier sought here is appropriate, and, as set forth in the Final Approval Brief, modest when measured against multipliers awarded in the Seventh Circuit and in comparable cases. See below.

As fully supported by the evidentiary record and as detailed in the Final Approval Brief, the quality of services provided and the results achieved in this case are outstanding. Plaintiffs' counsel negotiated a settlement encompassing far-reaching corporate governance and compliance reforms that, if faithfully implemented, will, in the opinion of plaintiffs' experts,

---

(Document # 95), pp. 9-11, 40), it was not until June 2009, when plaintiffs received the initial Term Sheet from Lilly, which adopted in large measure the key proposed reforms, that plaintiffs' counsel believed that the reforms would be deep and substantial enough to support a settlement of the derivative claims.

[4] *See also* Order Accepting Certified Question in *In re ITT Corporation Derivative Litigation* from the Indiana Supreme Court (Document # 82-4). The fact that the Southern District of New York required this issue to be certified to the Indiana Supreme Court (*see* Memorandum Decision and Order, Document # 82-3) further demonstrates the unsettled and complex nature of the law of derivative actions, particularly under Indiana law. Such uncertainty and complexity support the award of a substantial contingency multiplier. *See, e.g.*, *Florin II*,. 60 F.3d at 1248 (unsettled and complex law applicable to ERISA class action creates uncertainty and "increases the risk an attorney faces").

provide substantial benefits to Lilly, place Lilly at the forefront of the pharmaceutical industry, and provide a sound foundation for the management of drugs and drug candidates throughout their life cycle at Lilly. These benefits support the fee and the associated multiplier sought in this case. *See, e.g.*, Final Approval Brief, pp. 2, 7-37; 29-60; expert reports (Documents # 70, 71 and 72); Joint Attorney Declaration (Document # 83), ¶¶ 46-56, 61. The work necessary to achieve this result was substantial. *See, e.g.*, Joint Attorney Declaration; Morris Declaration (Document #84) with exhibits. Simply put, this settlement would not have been possible but for the experience, skill and sophistication that plaintiffs' counsel brought to bear on the highly complex intersection of governance and compliance theory and practice.

As addressed in the Final Approval Brief, the fee requested here, and the associated multiplier, are fully supported by fee awards in comparable cases within this Circuit and around the country. *See* Final Approval Brief, pp. 65-67, 71-72. Further supporting the requested award, the public policy implications of this settlement are substantial. The Supreme Court has recognized the important public policy considerations at the heart of derivative litigation, which places in the hands of individual shareholders the means to protect the interests of the corporation from misfeasance and malfeasance of its directors and officers. *See, e.g.*, *Kamen*, 500 U.S. at 95. *See also In re Schering-Plough Corp. Shareholders Derivative Litig.,* 2008 WL 185809 at *5 (D. N. J., January 14, 2008)("The results of counsels' efforts achieve the socially laudable goal of promoting regulatory compliance, which is particularly important in light of Schering's role as one of the world's leading pharmaceutical companies."); *Great Neck Capital Appreciation Investment Partnership v. PriceWaterhouseCoopers*, 212 F.R.D. 400, 411 (E.D. Wisc. 2002). As detailed in the Stipulation of Settlement (Document # 69-1) and the Final Approval Brief, the Corporate Governance Terms (Document # 69-2) provide substantial

9

benefits to Lilly, including in the prevention and detection of potential violations of law, regulation and Company policy.

The Seventh Circuit has stated "[t]he object in awarding a reasonable attorney's fee, as we have been at pains to stress, is to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation," *In re Continental Illinois Securities Litigation*, 962 F.2d 566, 572 (7th Cir. 1992). As detailed in the Joint Attorney Declaration (*see, e.g.*, ¶¶ 70-79) and the Infante Declaration (*see, e.g.*, Document # 85, ¶¶ 22-33), the Court has the benefit here as well of the adversarial, arms' length fee negotiation conducted before an expert and independent mediator.[5] The fee negotiations were contentious. *See* Infante Declaration, ¶¶ 30, 32. The result of this process was a proposed fee award of $8.75 million, inclusive of expenses, that reflects an "amount which all of the parties could support as fully reflective of the services Plaintiffs' Counsel rendered to Lilly." Infante Declaration, ¶ 32; Settlement Notice to Lilly Shareholders (Document # 69-5), p. 11.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Final Approval Brief and accompanying declarations and exhibits, plaintiffs, through their undersigned counsel, respectfully submit that the negotiated fee of $8.75 million, inclusive of expenses, is reasonable and fully supported by the applicable standards established by the Seventh Circuit with respect to fee awards in cases governed by equitable common fund principles, and should be approved in full.

---

[5] *See, e.g.*, *Cohn v. Nelson*, 375 F.Supp.2d 844, 861 (E.D. Mo. 2005)(in a derivative action with substantial governance and compliance reforms where a fee award had been mediated and agreed to by the parties, court held "[m]oreover, where, as here, the parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference.").

Dated: May 21, 2010

                                              Respectfully submitted,

                                              s/ Karen L. Morris
                                              Karen L. Morris
                                              Patrick F. Morris
                                              MORRIS and MORRIS LLC
                                                 COUNSELORS AT LAW
                                              4001 Kennett Pike, Suite 300
                                              Wilmington, DE 19807
                                              Phone: (302) 426-0400
                                              Fax: (302) 426-0400
                                              kmorris@morrisandmorrislaw.com

                                              Richard D. Greenfield
                                              Ann M. Caldwell
                                              GREENFIELD & GOODMAN, LLC
                                              250 Hudson Street – 8th Floor
                                              New York, NY 10013
                                              Phone: (917) 495-4446

                                              David C. Campbell
                                              BINGHAM MCHALE LLP
                                              10 West Market Street, Suite 2700
                                              Indianapolis, IN  46204-4900
                                              Phone: (317) 635-8900

                                              James P. Stenski
                                              CANTRELL, STRENSKI & MEHRINGER, LLP
                                              2400 Market Tower
                                              10 West Market Street
                                              Indianapolis, IN  46204
                                              Phone: (317) 352-3500

                                              *Attorneys for Plaintiffs, Jeffrey P. Jannett and N.A. Lambrecht, Derivatively on Behalf of Nominal Defendant, Eli Lilly & Company*


Of Counsel:

ABBEY SPANIER RODD & ABRAMS LLP
Karin E. Fisch
212 East 39th Street
New York, NY  10016

COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS LLP
Andrew J. Brown
655 West Broadway, Suite 1900
San Diego, CA 92101

FARUQI & FARUQI, LLP
Beth A. Keller
369 Lexington Avenue, 10th Floor
New York, NY 10017

PASKOWITZ & ASSOCIATES
Lawrence D. Paskowitz
60 East 42nd Street, 46th Floor
New York, NY 10165

ROBBINS UMEDA LLP
Daniel R. Forde
600 B Street, Suite 1900
San Diego, CA 92101

ROY JACOBS & ASSOCIATES
Roy L. Jacobs
60 E. 42nd Street, 46th Floor
New York, NY 10165

THE WARNER LAW FIRM
Paul T. Warner
11123 McCracken Circle, Suite A
Cypress, TX 77429

## **CERTIFICATE OF SERVICE**

   I hereby certify that on May 21, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Michael E. Baughman
Robert L. Hickok
PEPPER HAMILTON LLP
baughmanm@pepperlaw.com
hickokr@pepperlaw.com

Christopher G. Scanlon
Matthew T. Albaugh
BAKER & DANIELS
chris.scanlon@baker.com
matthew.albaugh@bakerd.com

Jan M. Carroll
BARNES & THORNBURG LLP
jan.carroll@btlaw.com

Peter T. Barbur
Duane L. Loft
Kyle W. Mach
CRAVATH SWAINE & MOORE LLP
pbarbur@cravath.com
dloft@cravath.com
kmach@cravath.com

Marc J.M. Moss
MARC J.M. MOSS, ESQ.
mmoss@mosslawllc.com

Paul T. Warner
THE WARNER LAW FIRM
pwarner@warner-law.net

                */s/* Patrick F. Morris