UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| N.A. LAMBRECHT, et al., | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:08-cv-68-WTL-TAB |
| | ) | |
| SIDNEY TAUREL, et al., | ) | |
|     Defendants. | ) | |

**REPORT AND RECOMMENDATION ON
MOTION FOR ENTRY OF ORDER AND FINAL JUDGMENT**

**I.     Introduction and Background**

This shareholder derivative action alleges that the Defendants have engaged in improper conduct including a pattern of illegal marketing and promotion of Prozac, Evista, and Zyprexa, thereby subjecting Eli Lilly and Company to liabilities exceeding $1 billion, investigation by federal regulators, and parallel investigations in more than twenty-five states. [Docket No. 1 at ¶¶ 32–34.] On February 25, 2010, after this action had been pending for more than two years, Plaintiffs moved for preliminary approval of a proposed settlement. [Docket No. 67.] The Court preliminarily approved the settlement on March 1, 2010, and scheduled a required settlement hearing for April 29, 2010. [Docket No. 76.]

Notice of the potential settlement was provided by publication in *The Wall Street Journal* and by first class mail to 368,417 potential Lilly shareholders. [Docket No. 86 at 5, 19.] The Court received twenty-one written responses from Lilly shareholders. Nineteen of these objected to the proposed settlement, and two merely stated that the author held Lilly stock or wished to receive money from the settlement. Of the nineteen, twelve objected to the requested attorney's fees or expressed the sentiment that the only winners in this case were the attorneys.

Plaintiffs moved for entry of order and final judgment on April 1, 2010. [Docket No. 80.] On April 28, 2010, Judge Lawrence referred the Plaintiffs' motion to the undersigned to preside over the settlement hearing and issue a report and recommendation regarding the appropriate disposition of Plaintiffs' motion. [Docket No. 93.] The Court notified all parties electronically of the changed location, and the Court posted notices of the change at Judge Lawrence's courtroom.

The parties appeared by counsel at 10 a.m. on April 29, 2010, before the undersigned for the settlement hearing. Because of the changed location, the Court monitored the halls surrounding Judge Lawrence's courtroom for persons interested in participating in the settlement hearing. All parties were given a full opportunity to be heard. Only one objector appeared in person and she was provided a full opportunity to present her views. The Court questioned counsel at the hearing regarding the proposed $8.75 million attorney's fee award, and ordered supplemental briefing regarding this fee request. Having considered the presentations and written materials of the parties and objectors, the Magistrate Judge recommends that Plaintiffs' motion for entry of order and final judgment [Docket No. 80] be granted, accompanied by an order with the provisions set out below.

**II.     Recommended Order**

1.     Unless otherwise defined herein, all terms that are capitalized shall have the same definitions as used in the Stipulation.

2.     This Court has jurisdiction over the subject matter of the above-captioned action (the "Federal Derivative Action") and the Settling Parties.

3.     Based upon the evidence submitted by Plaintiffs' Counsel, this Court finds that the form and the method of dissemination of both the Settlement Notice and the Summary Notice, as previously preliminarily approved by the Court, complied with the requirements of Federal Rule of

Civil Procedure 23.1, satisfied the requirements of due process, and constituted due and sufficient notice of the matters set forth therein. A full opportunity has been offered to Lilly Shareholders to object to the Settlement and to participate in the settlement hearing.

4. The Stipulation of Settlement calls for what Plaintiffs' experts describe as "far reaching" provisions that will "place Lilly at the forefront of the industry" in managing its products throughout their life cycles to ensure public safety from drug development through product marketing. [Docket No. 70 at 2; *see also* Docket No. 71 at 4 (characterizing practices as "far-reaching" and "best-in-class" for board governance and oversight).] The Stipulation directs numerous and significant governance changes over the next three years, including adoption of "Product Safety and Medical Risk Management" and "Compliance" Core Objectives. The Stipulation also provides for changes in board-level and management-level positions, and outlines changes in compensation, compliance training, discipline, and monitoring. [Docket No. 69, Ex.1A.]

5. The Stipulation of Settlement also proposes attorney's fees to Plaintiffs' Counsel in the amount of $8.75 million, inclusive of expenses, plus interest as set forth in the Stipulation of Settlement. This amount is the result of mediation before retired Chief Magistrate Judge Edward A. Infante. According to Judge Infante, Plaintiffs submitted "detailed information regarding the lodestar incurred in the case, broken down into seven separate categories of tasks" and "a detailed breakdown, by firm and by category of expenses, of the total expenses incurred to date by Plaintiffs' counsel." [Docket No. 85 at 9–10.] Additionally, Plaintiffs' Counsel provided copies of daily time records which Lilly's directors' and officers' insurance carriers were permitted to review under certain conditions. [*Id.* at 10.] Judge Infante reported that the parties discussed these materials and "both Carrier Counsel and the Company took a highly active role in negotiating the amount of fees."

[*Id.* at 11.] In the end, Judge Infante recommended the fee of $8.75 million, inclusive of expenses. Judge Infante believes this amount is "fair and reasonable, and fully reflective of the services Plaintiffs' Counsel rendered for the benefit of Lilly." [*Id.* at 12.]

6. The requested fee of $8.75 million is based on a lodestar of $6,647,376 enhanced by a multiplier of approximately 1.25, and it includes $424,746.48 in expenses. [Docket No. 84 at Exs. A–L.]

7. The Supreme Court recently decided *Perdue v. Kenny A.*, 130 S. Ct. 1662 (2010). *Perdue* took a dim view of multipliers, holding that "such an increase is permitted in extraordinary circumstances," but that "there is a strong presumption that the lodestar is sufficient." *Id.* at 1669. *Perdue* involved fee-shifting statutes, but at the April 29 hearing this Court questioned whether *Perdue* might apply in non-fee-shifting cases as well, especially given the history of arguably narrow Supreme Court holdings applying across the board. *E.g. Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) (applying a new standard to Rule 12(b)(6) motions in an antitrust case); *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (applying *Twombly* to all cases). With this history in mind, the Court ordered supplemental briefing on the applicability of *Perdue* and the reasons supporting use of a multiplier.

8. Plaintiffs provided the Court with an informative supplemental brief. [Docket No. 97.] After considering Plaintiffs' supplemental brief, the Court is satisfied that a multiplier is permitted in this case for the reasons set out in that brief.

9. *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994), holds that "a risk multiplier is not merely available in common fund cases but mandated, if the court finds that counsel had no sure source of compensation for their services" (quotation omitted). This is a

common fund case, and Plaintiffs' Counsel had no sure source of compensation. A multiplier is therefore appropriate, and the Court turns to whether the requested multiplier is appropriate.

10. After considering Plaintiffs' supplemental brief, the Court is satisfied that the requested multiplier is also appropriate. Plaintiffs' counsel provided high-quality services in obtaining a result that was not guaranteed. Further, the requested multiplier is within the range of multipliers awarded in comparable cases set out in Plaintiffs' briefing, [Docket No. 82 at 65–67, 71–72] and the amount was the result of "contentious" negotiations and Judge Infante's recommendation. [Docket No. 85 at 11–12.]

11. The Court therefore finds that the terms of the Stipulation and Settlement, including the requested attorney's fees, are fair, reasonable, and adequate, and in the best interests of Lilly and Lilly Shareholders. In making this determination, the Court has considered the substantial benefits the Settlement provides Lilly, taking into account among other factors the risks of establishing liability and proving damages, the complexity, expense, and likely duration of the litigation, and the stage of the proceedings.

12. The Court finds, for settlement purposes, that: (i) the Derivative Actions were properly brought as shareholder derivative suits pursuant to Federal Rule of Civil Procedure 23.1; and (ii) the Plaintiffs adequately represent the interests of Lilly Shareholders in enforcing the rights of Lilly.

13. The Stipulation and the terms of the proposed Settlement are, in all respects, approved, and the Stipulation is incorporated by reference as part of this Order. The Settling Parties are directed to consummate the Settlement in accordance with the terms and provisions of the Stipulation.

14. Subject to the provisions herein, the Magistrate Judge recommends that this Federal Derivative Action hereby be dismissed with prejudice and in its entirety, on the merits, as against all of the Settling Defendants, with each Settling Party to bear its own costs, except as otherwise set forth.

15. Upon the Effective Date, each of the Releasing Parties on behalf of himself, herself, and/or itself and each and all members of their families, parent entities, affiliates, or subsidiaries, and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries, and assigns, and all Persons acting in concert with any of the aforementioned persons and entities, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims as against the Released Parties, will be forever barred and enjoined from commencing, instituting, or prosecuting any of the Released Claims, and covenant not to bring any Released Claims.

16. Upon the Effective Date, each of the Settling Defendants, and each and all members of their families, parent entities, affiliates, or subsidiaries, and each and all of their respective past, present, or future officers, directors, employees, attorneys, accountants, insurers, auditors, heirs, executors, personal representatives, estates, administrators, predecessors, successors, custodians, agents, representatives, trusts, trustees, trust beneficiaries and assigns, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged the Releasing Parties and Plaintiffs' Counsel from all claims or demands relating to or

arising out of, or connected with the institution, prosecution, assertion, settlement, or resolution of the Derivative Actions and/or the Released Claims.

17. Named Plaintiffs are hereby awarded incentive payments in an aggregate amount of $35,000, in recognition of their efforts in initiating and pursuing this litigation. This amount shall be paid from the award of attorney's fees provided for above.

18. To the extent permitted by law, this Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation.

19. Neither this Stipulation, nor any of its terms or provisions, nor entry of the Judgment, nor any document or exhibit referred or attached to this Stipulation, nor any action taken to carry out this Stipulation, is, may be construed as, or may be used as evidence of the validity of any of the Released Claims or an admission by or against the Settling Defendants of any fault, wrongdoing or concession of liability whatsoever.

20. Neither this Stipulation nor the attached exhibits shall be offered or received into evidence in any action or proceeding in any court or other tribunal for any purpose whatsoever other than to enforce the provisions of this Stipulation, except that this Stipulation and the attached exhibits may be filed as evidence of the Settlement or in any action against the Released Parties to support a defense of *res judicata*, collateral estoppel, release, or other theory of claim or issue preclusion or similar defense.

21. This Settlement shall be a final and complete resolution of all disputes among the Settling Parties with respect to the Derivative Claims. No Settling Party may assert in any forum that the Derivative Actions were brought, commenced, or prosecuted by Plaintiffs or their counsel, or defended by the Settling Defendants or their counsel, in bad faith or that the Derivative Actions

were not filed or raised in good faith or were not settled voluntarily after negotiating at arm's-length and in good faith after consultation with competent legal counsel. No claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Derivative Actions may be brought by any Settling Party.

      22.    Without further order of the Court, the Settling Parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

### III. Conclusion

For the above reasons, the Magistrate Judge recommends that Plaintiffs' motion for entry of order and final judgment [Docket No. 80] be granted, accompanied by an order containing the provisions recommended above. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Dated:   06/08/2010

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

Matthew Thomas Albaugh
BAKER & DANIELS - Indianapolis
matthew.albaugh@bakerd.com

Peter T. Barbur
CRAVATH SWAINE & MOORE LLP
pbarbur@cravath.com

Michael E. Baughman
PEPPER HAMILTON LLP
baughmanm@pepperlaw.com

Ann M. Caldwell
CALDWELL LAW OFFICE LLC
acaldwell@classactlaw.com

David C. Campbell
BINGHAM MCHALE LLP
dcampbell@binghammchale.com

Jan M. Carroll
BARNES & THORNBURG LLP
jan.carroll@btlaw.com

Richard D Greenfield
GREENFIELD & GOODMAN LLC
whitehatrdg@earthlink.net

James H. Ham III
BAKER & DANIELS - Indianapolis
jhham@bakerd.com

Robert L. Hickok
PEPPER HAMILTON LLP
hickokr@pepperlaw.com

Duane L. Loft
CRAVATH SWAINE & MOORE LLP
dloft@cravath.com

Kyle W. Mach
CRAVATH SWAINE & MOORE LLP
kmach@cravath.com

Karen L. Morris
MORRIS & MORRIS LLC
kmorris@morrisandmorrislaw.com

Patrick F. Morris
MORRIS AND MORRIS LLC
pmorris@morrisandmorrislaw.com

Marc J.M. Moss
MARC J.M. MOSS, ESQ.
mmoss@mosslawllc.com

Bruce G. Murphy
265 Llwyds Lane
Vero Beach, FL 32963

Christopher G. Scanlon
BAKER & DANIELS - Indianapolis
chris.scanlon@bakerd.com

James P. Strenski
CANTRELL, STRENSKI & MEHRINGER, LLP
jstrenski@csmlawfirm.com

Paul T. Warner
THE WARNER LAW FIRM
pwarner@warner-law.net