UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

FILED
UNITED STATES DISTRICT ~~~~
JUN 14 2010
Southern District of Indiana
Indianapolis Division

N.A. LAMBRECHT, et al.,           )
       Plaintiffs,                )
                                  )
vs.                               )     1:08-cv-68-WTL-TAB
                                  )
SIDNEY TAUREL, et al.,            )
       Defendants.                )

THE SHASHOUA LIVING TRUSTS OBJECTION TO
REPORT AND RECOMMENDATION ON
MOTION FOR ENTRY OF ORDER AND FINAL JUDGMENT

The Shashoua Living Trust is the owner of 2110 shares of Eli Lilly & Company stock. I am the Trustee of the Trust and had previously filed an Objection (see Appendix A attached hereto) to the award of attorney's fees in this case as well as a Supplemental Objection (see Appendix 2 attached hereto) after receipt of certain of Plaintiff's pleadings.

Pursuant to 28 U.S.C. section 636(b)(1), I object to certain provisions of the Report and Recommendation on Motion for Entry of Summary Judgment ("Report") filed by US Magistrate Judge Tim A. Baker on June 8, 2010 and hereby request the District Court conduct a de novo review of the matters objected to below, as per the requirements of said statute.

I specifically object to paragraphs 10 and 11 to the extent that the Magistrate Judge finds the fee multiplier is appropriate, and the requested attorneys fees are "fair, reasonable, and adequate, and in the best interests of Lilly and Lilly Shareholders." As a result, I also object to paragraph 13 which approves the terms of the Settlement "in all respects." A modification by the District Court of this Order is requested for the reasons set forth below.

A multiplier is awarded to compensate counsel for the risks taken at the inception of the litigation by Plaintiff's counsel. It also is a reflection of the ultimate benefit the shareholders receive. No

multiplier should be awarded in this case due to the fact that the Plaintiffs did not try to achieve the results of the Settlement through non litigious means. Instead of burdening the Company and its shareholders with this costly burdensome litigation, Plaintiffs could have tried to bring a resolution forward at the Annual Shareholder's Meeting requesting the establishment of a Board committee to investigate and recommend to the Board at large corporate governance measures similar to these. In the number of words allotted by SEC rules and regulations (500 words) for a proposed shareholder's resolution in a Proxy Statement, Plaintiffs could have set forth an outline of the goals to be achieved by these measures and could give the shareholders a meaningful basis on which to vote. Instead of a Special Litigation Committee of the Board which was appointed to oversee the defense of this case, a Special Governance Committee of the Board could have been selected with the mandate to set out governance measures such as the ones that are contained in the Settlement Agreement. Certainly, it was within the rights of a Plaintiff's to propose in the Proxy Statement that a Board committee be appointed to investigate fundamental corporate governance matters. This could have achieved substantially the same results to the Company and its shareholders as this costly and burdensome litigation and therefore, <u>no risk would have been needed to be taken by Plaintiff's counsel</u>. Furthermore, the sole focus of the Corporate Governance Committee would have been to create governance measures to benefit the Company, as opposed to spending much of its time on litigation strategy. There would have been no need for the Company to retain dozens of lawyers to defend itself and to pay $8.75 million to the dozens of plaintiff's lawyers involved in this case. This was simply a risk that counsel did not need to take to achieve the desired results. For these reasons, a multiplier of 25% should be rejected.

With respect to the reasonableness of the attorneys fees themselves, in my Supplemental Objection, a copy of which is attached, I demonstrated how the Plaintiff's attorneys set up committees of lawyers with primary responsibility for handling different aspects of the case but in implementation of these measures, did not follow their own procedures and had law firms that were not designated to work on an aspect of the case bill time on it anyway. I referred to the Lodestar calculation which is contained

in Appendix 3 hereto and showed that in Categories 2, 3 and 4, there was overbilling in the amount of approximately $1,250,000 to $1,600,000. The Magistrate Judge apparently did not agree with this analysis and takes much comfort in the fact that the Mediator, Judge Infante, brokered a settlement on fees with the various parties. I noted from the pleadings that Judge Infante was also the mediator in the Schering Plough class action case handled by the Morris firm with a similar set of facts (using at least one of the same experts as in this case to substantiate the merits of the settlement).

With all due respect to Judge Infante, the subject of attorney's fees for this type of case should not be a cookie cutter exercise and is also not one that should be dealt with by "splitting the baby". The great pains taken by the Morris firm to establish a process of mediation is a disingenuous attempt to give credence to an inflated fee request. This clever process should not take the place of detailed review of all aspects of the time billed on this case. A Special Master should be appointed to review carefully all the time sheets. He should compare the time spent by each firm on each topic in the Lodestar chart to the assignment of responsibility as set out in the Joint Declaration of Counsel. He should eliminate excess time billed by any counsel that was not assigned to the category of litigation set forth in the Lodestar chart and pay keen attention to duplication of effort.

For these reasons, The Shashoua Living Trust objects to the Report and respectfully asks the District Court to make a de novo review of the matters set forth above and take actions consistent with the requests set forth herein.

Dated: 6/9/2010

                                                          Ezra Shashoua
                                                          Trustee
                                                          THE SHASHOUA LIVING TRUST

APPENDIX 1

**Ezra Shashoua**
**3990 NW 52nd Place**
**Boca Raton, FL  33496**
**Email: eshashoua@ffn.com**
**Telephone: 954-205-8744**

March 22, 2010

Clerk of the Court
Attn: Honorable William T. Lawrence
United States Courthouse
46 E. Ohio Street
Room 105
Indianapolis, IN  46204

Re: Lambrecht, et al. v. Taurel, et al., C.A. No. 1:08-cv-0068-DFH-TAB (S.D. IN.) and Zemprelli vs. Taurel et al., C.A. No. 1:08-cv-0874- SEB-TAB (S.D. IN.)

Dear Judge Lawrence:

    I am the trustee of the Shashoua Living Trust. The Trust owns 2110 Shares of Eli Lilly & Company stock. My wife and I, either individually or through this Trust, have had ownership of Lilly shares for at least 20 years. The Trust has received the notice of settlement of Eli Lilly & Company Derivative Claims in the above referenced matter and in my capacity as the Trustee of the Trust, I object to the settlement provisions outlined in Section E.2. with respect to the payment of legal fees in the amount of $8,750,000 and to the adequacy of the disclosure pertaining to the proposed attorneys fee award.

    I believe the request by plaintiffs of this amount is excessive and egregious given the substantive terms of the settlement. Increased corporate governance is not a novel thought and companies such as Lilly always are looking at best practices of other companies to determine how best to improve their own corporate governance. Please note that in the Company's most recent Proxy Statement dated March 8, 2010, there were six proposals on changing corporate governance of which two were proposed by the Company and four by shareholders. If enhancing shareholder value and shareholder transparency is the goal of these plaintiffs, <u>why didn't these plaintiffs propose these corporate governance measures to the Company's shareholders so they could be voted on by all shareholders?</u> That would have been the best way to move forward on these measures and would not have caused the Company to needlessly incur millions of dollars that this litigation has taxed the Company.

Specific Objections:

1. In this type of fee shifting case, where there is no monetary fund established as a result of the litigation, a percentage of the fund method of determining the attorney fee award is not best suited to determine the amount of the award. Courts in this circuit as well as certain other circuits continue to use the lodestar method. You have total discretion to decide to use the lodestar method, which is the only true way of establishing an award since the benefits of this settlement to the shareholders are relatively specious. In <u>Harman v. Lyphomed, Inc.</u> 945 F.2nd 969 (7th Cir. 1991), the Court firmly stated that the method of determining the award for attorneys fees is in the discretion of the court and the Court did not overturn the district court judge's use of the

1

lodestar method. The Court carefully weighed the advantages of using a lodestar approach in the subject case and determined to use the lodestar method. The Court also discussed the factors that the trial judge should use in determining the reasonableness of the hours expended and billing rates charged. Id. at p.974.

2. Please consider the following facts, which are the only facts I have available to me through the disclosure statement. On an hourly basis, the award of $8.75 million equates to 21,875 hours, or more than 12 man-years of work assuming a very generous average billing rate for lawyers and paralegals of $400 per hour and 1800 hours per year. The disclosure statement has inadequate disclosure as to what work was performed by plaintiff's counsel, except to say that 85,000 documents were reviewed and some depositions were taken. This number of documents is very low in comparison to other class actions where much smaller fees were requested and awarded. I am very skeptical that hours anywhere approximating 12 individuals working full time for one year on this case was approached. As you are aware, it is not unusual in a class action derivative suit to have hundreds of thousands of documents at issue. Even if depositions were taken of all of the directors and assuming several thousand pages of deposition testimony, the proposed award is still excessive on the basis of the work performed. You should demand from the plaintiff's counsel a detailed accounting of time spent on this matter and compensate them for the hours spent, less duplicative time of having several attorneys attending the same meetings, attending the same depositions and reviewing the same documents. You should then apply the lodestar method to the reasonable number of hours expended on this matter.

3. Plaintiffs may argue for a risk multiplier if the lodestar method is chosen as I suggest. In certain cases, a risk multiplier may be used by a trial judge to reflect the risk of loss or contingency, but again, this decision is totally at the discretion of the trial judge. (See Harman and Florin v. Nationsbank of Georgia, N.A. 34 F.3rd 560 (7th Cir. 1994) for a discussion of factors to be considered in applying risk multipliers.) I urge the Court to apply no multiplier to the fees incurred in this matter. Please consider that in this case, a risk multiplier is not justified given the outcome of increased corporate governance requirements. The benefit to the shareholders is qualitatively hard to discern and quantitatively, provides zero benefit. As stated above, these plaintiffs could have proposed these corporate governance measures to the Company's shareholders so they could be voted on by all shareholders, but they didn't. They chose the most cumbersome and costly way of getting these measures passed. There is also a cost in terms of implementing these measures as well as increased directors and officers insurance premiums as a result of the Company and its insurance carriers agreeing to this huge attorneys fee award. For these reasons, a multiplier is not warranted in this case.

4. For the reasons outlined above, the disclosure regarding attorney's fees is woefully inadequate. There is no disclosure as to the work performed, and number of hours spent on this matter. There is no disclosure as to what prompted the resolution in mediation of the attorneys fees issue other than all sides capitulated. To award $8.75 million for attorney's fees on the basis of a two short paragraph disclosure would be a travesty of justice.

I am looking into retaining counsel in Indianapolis as well as expert witnesses to appear at the hearing on April 29, 2010 to further buttress these arguments. I will notify you by April 15, 2010 if I will so appear. However, irrespective of a personal appearance, please consider this my formal objection to the settlement.

2

Thank you for your consideration.

Respectfully,

*[signature]*

Ezra Shashoua
Trustee
The Shashoua Living Trust

Cc: Karen L. Morris
    Richard D. Greenfield
    Robert L. Hickok
    Teri Cotton Santos

Ezra Shashoua
3990 NW 52nd Place
Boca Raton, FL 33496
Email: eshashoua@ffn.com
Telephone: 954-205-8744

*APPENDIX 2*

April 9, 2010

Clerk of the Court
Attn: Honorable William T. Lawrence
United States Courthouse
46 E. Ohio Street
Room 105
Indianapolis, IN 46204

Re: **Supplemental Objection to Award of Attorneys Fees by Plaintiffs in Lambrecht, et al. v. Taurel, et al., C.A. No. 1:08-cv-0068-DFH-TAB (S.D. IN.) and Zemprelli vs. Taurel et al., C.A. No. 1:08-cv-0874- SEB-TAB (S.D. IN.)**

Dear Judge Lawrence:

1. This letter is intended to supplement my Objection Letter dated March 22, 2010. In that letter, I specifically objected to the attorneys fees requested by Plaintiffs' counsel in this matter. Since I wrote that letter to you, on April 1, 2010, Plaintiffs filed with the Court <u>Plaintiffs' Memorandum of Law in Support of Final Approval of Proposed Settlement, Award of Attorneys' Fees, Inclusive of Expenses, and Payment of Incentive Award to Named Plaintiffs</u> ("Plaintiff's Memorandum"), along with Defendants' Memorandum of Law and other Declarations and Affidavits supporting the Settlement. Plaintiffs' counsel furnished me copies of these pleadings, as well as the Stipulation of Settlement and various expert reports filed earlier in the case.

2. I have reviewed these pleadings carefully and wish to supplement my objections with more detailed analysis of the facts provided therein.

3. In this letter, I will refer specifically to the <u>Declaration of Karen L. Morris in Support of Final Approval of Proposed Settlement And The Award of Attorneys' Fees, Inclusive of Expenses and the Payment of Incentive Award to Named Plaintiffs</u> ("Declaration"), and the <u>Joint Declaration of Karen L. Morris and Richard D. Greenfield in Support of Final Approval of Proposed Settlement And The</u>

Award of Attorneys' Fees, Inclusive of Expenses and the Payment of Incentive Award to Named Plaintiffs ("Joint Declaration"), both filed on April 1, 2010.

4. In her Declaration, Ms. Morris provides as Exhibit A, a Lodestar Category Breakdown in which the hours of each of the Plaintiffs' law firms are broken out into 6 categories. I specifically object to the request of Plaintiff's attorneys for reimbursement of legal fees for hours spent on matters included in Categories 2, 3 and 4.

5. To frame my objection properly, we should first look at Category 4-Preparation and Attendance at meetings, coordination of actions. In her Declaration, Ms. Morris indicates this category reflects "work done in connection with the preparation and attendance of meetings and the coordination of the action among counsel" See Paragraph 7 of the Declaration. It also reflects work performed in preparing a Settlement Process Agreement and the Coordination Agreement. Exhibit A indicates that 960.75 hours was spent on these activities. Over 537 hours of this time was spent by Ms. Morris' firm, 297 hours by Greenfield & Goodman, and over 109 hours by Faruqi & Faruqi. That is an incredible amount of coordination time. For this 960 hours of work in this category amounting to approximately **$625,000** of fees when taking into account the 1.25 multiplier requested, I don't believe the Plaintiff class received any substantial benefit. In Categories 2 and 3, which will be discussed below, where coordination is essential, there was clearly a lack of it. <u>I would urge the court to reduce the fee award in this category by approximately one half of the amount billed-$300,000 to $350,000 for lack of value received, as will be shown below.</u>

6. Category 2 reflects a total of 3,080.10 hours for "Governance and compliance research, development and analysis". This equates to at least **$1,900,000** with the multiplier. In the Joint Declaration, Plaintiffs claim they established a process for efficiently proceeding in the litigation. In paragraph 20 of the Joint Declaration, it is stated that 4 committees were formed. One of the committees was the "Governance and Compliance Development And Analysis Committee, with principal responsibility assigned to the Morris Firm and the Coughlin firm." The principal responsibility for

the Legal Research and Motion Practice Committee was given primarily to the Paskowitz Firm and the Abbey firm. See paragraph 20 a. of the Joint Declaration. The lodestar calculation does not reflect these facts and the allocation of duties as set forth therein, however. In this category 2, the hours are spread among all of the Plaintiffs' firms with 5 firms having more than 100 hours, including Greenfield at 493 hours and Morris at 1826.75 hours. The Paskowitz firm spent 133 hours and the Abbey firm spent 4 hours in this category. It is incomprehensible why the governance and research hours are scattered among all the different firms and with no pattern of billing resembling the roles outlined in the Joint Declaration. The Greenfield firm is not mentioned as one of the firms with principal responsibility in this area and yet are charging 493 hours to the project! This leads to an inescapable conclusion- the Greenfield firm did not follow the guidelines that were established and proceeded outside the bounds of their duties as assigned by their own Executive Committee to needlessly add at least $300,000 to the legal bill inclusive of the multiplier. Further, why did the Morris firm need to spend 1826 hours on research? Clearly, the Morris firm, with prior experience in similar cases such as the Schering Plough class action case (which is referenced by Plaintiffs in their most recent pleadings as precedent for the award of fees in this case) should have been able to use much of its corporate governance research from that case in the instant case. A more detailed look at the research and potential duplication of effort by the 10 firms is required before approving the fees in this category. At a minimum, $300,000 to $500,000 should be deducted from the legal fee award for needless duplication of effort by the Greenfield firm and the Morris firm.

7   Category 3 reflects a total of 3225.25 hours of "Discovery management, document review, merits and damages analysis". With the multiplier, this works out to at least **$2,000,000.** In the Joint Declaration, Plaintiffs state that they assigned principal responsibility for the "Discovery Management and Merits Analysis Committee to the Greenfield firm, the Abbey firm and the Faruqi firm." Id. However, this work is spread among 7 firms, with 5 firms spending at least 344 hours. In addition to the substantial hours spent by Greenfield, Abbey and Farouqi in this category, Morris spent 602.5 hours, Paskowitz spent 462 hours and Warner spent 107 hours. These latter three firms were not even assigned principal responsibility to these tasks! With all due respect, this number of hours did not need to be spent on 85,000 pages of documents and 70 depositions. It should raise

some suspicion given the multitude of hours spent by all these firms in this category given the fact that there was not an inordinate number of pages of documents and not an inordinate amount of depositions that there was duplication of effort and inefficiencies in the way the work was managed. At a minimum, there should be a deduction of 1100 hours of work, or approximately $650,000 to $750,000 for work done in this category.

8. The only conclusion to be drawn from the pleadings available and the lodestar calculations is that the Morris firm and the Greenfield firm, as well as others, did not follow the delineation of duties that they set out for themselves. This was a fee billing extravaganza of the worst proportions with no adherence to the self disciplinary measures imposed on the law firms by their self appointed Executive Committee. I am not convinced the Defendant's representatives in this case and the insurance companies which reviewed the timesheets and billings reviewed them in sufficient detail to address these concerns. I have no comfort that they and Defendants had the best interests of the shareholders in mind when they agreed to the Solomonic proposal of the mediator for an award of $8.75 million.

9. I would urge the Court to reduce the attorneys fee award in this case in a range of $1,250,000 to $1,600,000 for the reasons set forth above. In addition, Rule 53 of the Federal Rules of Civil Procedure allows you to appoint a Master if appointment is warranted by "the need to perform an accounting or resolve a difficult computation of damages..."See Rule 53(a)(1)(B)(ii). I urge you to appoint a Master to review the legal fees in this case, including a review of the various timesheets by the lawyers on this case, to determine if the billings reflect true efficiency in the way the case was handled and to eliminate time charges which are overly duplicative or needless. The Master would ideally be an auditor with legal experience or would appoint an expert to perform this review under his direction. This review is essential in a case where the Plaintiffs' attorneys also ask for a 1.25 multiplier, which unduly rewards inefficiency and waste.

10. Your Honor, one final note. I have never before objected to a petition for legal fees in any sort of case in which I was a class member, of which there have been many. I was previously a practicing lawyer making my livelihood in this noble profession so I hesitate in objecting to any other lawyer's petition for fees as I feel I must give them the benefit of the doubt. However, if there was ever a case that demanded closer scrutiny of the fees charged against the Company, this is the one. I reiterate my substantive objections in my first letter. Please do not let this process of review that rests in your hands turn into a pro forma exercise that will be followed in the inevitable stream of these cases to come. If these Plaintiff's firms are to charge these types of very profitable fees in cases such as Schering Plough and Lilly, where tens of millions of dollars will be spent to comply with these new governance measures by each company which falls into Plaintiff's web, let's take the time to carefully review the fees charged in this case before approving them. The shareholders of Eli Lilly & Company deserve no less.

11. I intend to appear and speak at the Hearing on April 29, 2010. I do not plan on calling any witnesses but will introduce into evidence Exhibit A of the <u>Declaration</u> as well as Exhibit 5 to <u>Plaintiffs' Memorandum.</u> Please have the attorneys in this case copy me on any pleadings responsive to my objections and notify me of any changes in the schedule of the Hearing.

    Thank you for your consideration.

Respectfully,

*[signature]*

Ezra Shashoua
Trustee
The Shashoua Living Trust

Cc: Karen L. Morris
    Richard D. Greenfield
    Robert L. Hickok
    Teri Cotton Santos