UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| _____ | | |
| N.A. Lambrecht and Jeffrey P. Jannett, | : | |
| Derivatively on Behalf of Nominal | : | |
| Defendant Eli Lilly & Company | : | |
| | : | |
| Plaintiffs, | : | C.A. No. 1:08-cv-0068-WTL-TAB |
| | : | |
| v. | : | |
| | : | |
| Sidney Taurel, John C. Lechleiter | : | |
| Sir Winfreid Bischoff, J. Michael Cook, | : | |
| Franklyn G. Pendergast, Kathi P. Seifert, | : | |
| George M. Fisher, Alfred G. Gilman, | : | |
| Martin S. Feldstein, J. Erik Fyrwald, | : | |
| Ellen R. Marram, Sir John Rose, | : | |
| Charles E. Golden, Steven C. Beering, | : | |
| August M. Watanabe, Linda Lay, | : | |
| Randall L. Tobias and J. Clayburn | : | |
| LaForce, Jr., | : | |
| | : | |
| Defendants | : | |
| | : | |
| -and- | : | |
| | : | |
| ELI LILLY & COMPANY, | : | |
| | : | |
| Nominal Defendant. | : | |
| _____ | : | |

**PLAINTIFFS' RESPONSE TO THE SHASHOUA LIVING TRUST'S
OBJECTION TO REPORT AND RECOMMENDATION ON MOTION
FOR ENTRY OF ORDER AND FINAL JUDGMENT**

Plaintiffs, by their undersigned counsel, hereby respectfully submit their response, pursuant to Fed. R. Civ. P. 72(b)(2), to the Shashoua Living Trust's Objection to Report and Recommendation on Motion for Entry of Order and Final Judgment ("Shashoua Objection," Document # 99).  Mr. Ezra Shashoua, trustee of the Shashoua Living Trust, has filed an objection to Magistrate Judge Baker's Report and Recommendation dated June 9, 2010 (the "R&R," Document # 98).  Mr. Shashoua's Objection is limited to paragraphs 10 and 11 of the R&R "to the extent that the Magistrate Judge finds the [1.25] fee multiplier is appropriate, and the requested attorneys [sic] fees are 'fair, reasonable, and adequate, and in the best interests of Lilly and Lilly Shareholders.'"  Although Mr. Shashoua further states: "I also object to paragraph 13 which approves the terms of the Settlement 'in all respects'" (Shashoua Obj., p. 1), he does so "[a]s a result" of his objections to ¶¶ 10 and 11.  Mr. Shashoua limits the reasons for his request that the R&R be modified to his contentions concerning the recommended award of attorneys' fees, and does not object to the merits of the settlement.

For the reasons set forth below (and in prior submissions to the Court referred to herein), Mr. Shashoua's objection to the R&R should be denied.  Plaintiffs respectfully request that the Court, pursuant to Fed. R. Civ. P. 72(b)(3),[1] enter an Order, in the form submitted herewith, adopting the R&R and overruling the Shashoua Objection.

**Mr. Shashoua's Objection to the Multiplier is Without Merit**

1.       Mr. Shashoua has not objected to Magistrate Judge Baker's recommended ruling that a risk multiplier is appropriate in this case because it is a common fund case and plaintiffs' counsel had no sure source of compensation for their services (*see* R&R, ¶ 9) citing *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 565 (7th Cir. 1994)(holding that "a risk multiplier is

---

[1] Rule 72(b)(3) requires the Court to "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."

not merely available in common fund cases but mandated, if the court finds that counsel had no

sure source of compensation for their services" (quotation omitted)).[2]  Instead, Mr. Shashoua

argues that no risk multiplier should be awarded because, he contends, the derivative litigation

should never have been commenced in the first place.  Mr. Shashoua contends that plaintiffs

instead should have sought the necessary corporate governance and compliance changes through

the shareholder proposal process under the federal proxy rules.  This objection was considered

and properly overruled by Magistrate Judge Baker.  *See* transcript of final settlement hearing

("Transcript"), pp. 40-41; R&R, p. 2.  As was extensively briefed by both plaintiffs and

defendants in connection with the final settlement hearing,[3] Mr. Shashoua's objection is incorrect

as a matter of law, and ignores the legal, procedural and practical impediments that would have

precluded using the SEC Rule 14a-8 shareholder proposal procedure to achieve the far-reaching

governance and compliance benefits provided for under the proposed settlement.

       2.      As detailed in documentation filed in connection with the preliminary and final

approval of the settlement, including as referenced herein, the benefits provided for under the

proposed settlement, to which Mr. Shashoua does not object, include highly specific and detailed

management-level  provisions affecting health care law compliance, medical and patient safety

risk management throughout the life cycle of Lilly's drug products, and corresponding

centralized management and board oversight provisions.  These benefits are laid out in over

---

[2]  As stated in the R&R (¶¶ 7-8), Magistrate Judge Baker ordered supplemental briefing on the application of a lodestar multiplier in this case.  As explained in detail in Plaintiffs' Supplemental Memorandum of Law, dated May 21, 2010 (Document # 97), pp. 1-6, Magistrate Judge Baker's recommended conclusion approving the application of a multiplier in this case is fully consistent with Seventh Circuit precedent. *See* R&R, ¶ 9.

[3] *See* Plaintiffs' Reply Memorandum of Law in Support of Final Approval of Proposed Settlement, Award of Attorneys' Fees, Inclusive of Expenses, and Payment of Incentive Award to Named Plaintiffs ("Plaintiffs' Reply Brief," Document # 90), pp. 9-11; Defendants' Reply Memorandum of Law in Support of Final Approval of Proposed Settlement ("Defendants' Reply Brief," Document # 92), pp. 4-6.

nineteen full pages of single spaced type in Exhibit A to the Stipulation, "Corporate Governance

Terms" (Document # 69-2).

3.      The provisions of the Corporate Governance Terms comprise many individual

proposals carefully designed and negotiated to form a comprehensive and cohesive whole.  *See,*

*e.g.*, Report of Dr. Mitchell Glass (Document # 70), ¶¶ 3, 6, 10; Declaration of Professor Donald

C. Langevoort Regarding the Substantive Benefits of the Settlement Terms (Document # 72), ¶¶

6-8, 51-53.  These provisions resulted from over 100 pages of annotated proposals (with several

thousand pages of supporting materials) researched, analyzed and drafted by plaintiffs' counsel,

followed by extensive face-to-face meetings and negotiations between counsel, high-level Lilly

executives and plaintiffs' expert,  as well as mediation before retired Magistrate Judge Infante.

*See, e.g.*, Joint Declaration of Karen L. Morris and Richard D. Greenfield in Support of Final

Approval of Proposed Settlement, Award of Attorneys' Fees, Inclusive of Expenses, and

Payment of Incentive Award to Named Plaintiffs ("Joint Attorney Declaration," Document # 83),

¶¶ 39-57; Declaration of Mediator Edward A. Infante in Support of the Proposed Settlement and

Award of Attorneys' Fees, Inclusive of Expenses ("Infante Decl.," Document # 85), ¶¶ 15-21.

4.      As detailed in Plaintiffs' Reply Brief, applicable SEC rules governing shareholder

meeting proposals preclude the ability to attempt, much less obtain, the wide-ranging

management and board level provisions the settlement provides.  Under SEC rules, shareholder

proposals (including supporting statements) are limited to 500 *words* or less, and no more than

one shareholder proposal may be submitted by any single shareholder for a particular

shareholders' meeting.  *See, e.g.*, 17 C.F.R. §§240.14a-8(c) and (d).  Because of this strict

limitation, the shareholder proposal process does not provide an adequate vehicle for the

proposal, negotiation, and ultimate accomplishment of the far-reaching changes achieved here.

Mr. Shashoua's assertion, at page 2 of his objection to the R&R, that "[i]n the number of words allotted by SEC rules and regulations (500 words) for a proposed shareholder's resolution in a Proxy Statement, Plaintiffs could have set forth an outline of the goals to be achieved by these measures," provides no basis to conclude that the corporate governance and compliance terms of the proposed settlement, achieved only after expansive merits assessment, based on *inter alia*, review and analysis of tens of thousands of pages of internal Company documents and testimony of employees and experts, extensive, detailed written proposals, intensive negotiation, and mediation, could have been achieved through a 500 word shareholder resolution.

5.      Additionally, under SEC Rule 14a-8(i)(7), a company may exclude from its proxy materials any shareholder proposal dealing "with a matter relating to the company's ordinary business operations." 17 C.F.R § 240.14a-8(i)(7).  As correctly noted by the defendants in their Reply Brief, one of the policies underlying this "ordinary business" exclusion is that "certain tasks are so fundamental to management's ability to run a company on a day-to-day basis that they could not, as a practical matter, be subject to direct shareholder oversight."  *See* Final Rule: Amendments to Rules on Shareholder Proposals, Release No. 34-40018 (May 28, 1998). Another policy behind the exclusion is to protect companies from shareholders who "seek[] to 'micro-manage' the company by probing too deeply into matters of a complex nature upon which shareholders, as a group, would not be in a position to make an informed judgment." *See id*.

6.      These policies are directly implicated here.  The governance and compliance provisions achieved through the settlement go to the heart of Lilly's management of its products' life cycles and implicate complex questions of medicine, science, patient safety and industry best practices.  Shareholder proposals addressing similar subject matter have been ruled excludable

under 17 C.F.R § 240.14a-8(i)(7) by the SEC.  *See Merck & Co., Inc.*, 2008 WL 162838 (S.E.C.

No-Action Letter) (2008) (shareholder proposal directing that Merck "encourage and support

scientists to produce and present valid and correct scientific results" was excludable under Rule

14a-8(i)(7)).  Given the substance, policy and SEC interpretation of the ordinary business

exclusion, seeking such changes through the shareholder proposal process would have been a

futile act.

7.      Furthermore, as correctly noted by defendants in their Reply Brief, such a

shareholder proposal would also be excludable from the Company's proxy statement under Rule

14a-8's "improper under state law" exclusion.  Rule 14a-8(i)(1) provides that a company may

exclude a shareholder's proposal from its proxy statement if the proposal is not a proper subject

for action by shareholders under the laws of the jurisdiction of the company's organization.  *See*

17 C.F.R. § 240.14A-8(i)(1).  The note to Rule 14a-8(i)(1) highlights that some proposals may

not be proper under state law if they would be binding on the company if approved by

shareholders.  *See id*.  This is the case in Indiana, Lilly's state of incorporation.  The Indiana

Business Corporation law provides that all "corporate powers shall be exercised by or under the

authority of, and the business and affairs of the corporation managed under the direction of, its

board of directors, subject to any limitation in the articles of corporation."  *See* Ind. Code 23-1-

33-1(b).

8.      Because there is no limitation in the Company's articles of incorporation that

would permit its shareholders to impose corporate governance enhancements on Lilly, the

proposal Mr. Shashoua contemplates would be improper under Indiana state law, and thus

excludable.  Moreover, shareholder proposals imposing mandatory requirements on corporate

management, as opposed to proposals presented as non-binding requests, are routinely deemed

excludable under 17 C.F.R § 240.14a-8(i)(1).  *See, e.g.*, *Adoption of Amendments Relating to Proposals by Security Holders,* Release No. 34-12999, 1976 WL 160347 (November 22, 1976).[4]

Thus, even if a general 500 word resolution imagined by Mr. Shashoua could have suggested some program of corporate governance and compliance changes, and even if such resolution were not excluded from the Company's proxy statement under the ordinary business exclusion, under SEC Rule 14a-8(i)(1), it could never have constituted an enforceable mandate to the Lilly board.  By contrast, the derivative litigation has yielded highly detailed, enforceable contractual commitments that will be embodied in an order of the Court if the proposed settlement is approved.

   9. In short, the scope of the governance and compliance relief achieved here could not have been obtained through use of the proxy process.  In contrast, the law has long recognized that a shareholder derivative action is an appropriate avenue for shareholders to seek redress for alleged management misfeasance and malfeasance.  *See Kamen v. Kemper Financial Services*, *Inc.*, 500 U.S. 90, 95 (1991); *Ross v. Bernhard*, 396 U.S. 531, 534 (1970)(tracing the history of shareholder derivative actions in English and American Courts back to the early 19th century).  Moreover, the courts have long recognized the value of non-monetary relief in shareholder derivative actions, *see, e.g., Mills v. Electric Auto Lite Co*., 396 U.S. 375, 397-398 (1970), and, as discussed at length in plaintiffs' Final Approval Brief, courts have approved settlements of derivative actions and indeed have encouraged this type of relief where the Court finds the benefits negotiated are substantial.  *See* Plaintiffs' Memorandum of Law in Support of Final Approval of Proposed Settlement, Award of Attorneys' Fees, Inclusive of Expenses, and

---

[4] "[P]roposals by security holders that mandate or direct the board to take certain action may constitute an unlawful intrusion on the board's discretionary authority under the typical statute. On the other hand, however, proposals that merely recommend or request that the board take certain action would not appear to be contrary to the typical state statute, since such proposals are merely advisory in nature and would not be binding on the board even if adopted by a majority of the security holders." *Id*. at * 7.

Payment of Incentive Award to Named Plaintiffs ("Final Approval Brief," Document # 82),

Section IV.B.1.   Plaintiffs appropriately pursued redress on behalf of Lilly and its shareholders

by proceeding with derivative actions pursuant to Federal Rule of Civil Procedure 23.1, and by

doing so, have achieved the substantial benefits embodied in the proposed settlement.

10.     For all of the reasons stated above, plaintiffs respectfully submit that Mr.

Shashoua's objection to the award of a multiplier be overruled, and that for all of the reasons set

forth in the R&R, the Court approve the 1.25 multiplier.

**Mr. Shashoua's Objection to the Reasonableness of the Attorneys' Fees is Without Merit**

11.     On the basis of unsupported allegations, Mr. Shashoua claims the time expended

in three of the categories reflected on plaintiffs' counsel's Lodestar Chart[5] are excessive.  Mr.

Shashoua raised each of these claims in his Supplemental Objection (Document # 90-1). These

claims were each refuted based on record support in Plaintiffs' Reply Brief (*see, e.g.*, pp. 11-15),

and considered and properly overruled by Magistrate Judge Baker in the R&R (*see, e.g.*, p. 2).

*See also* Transcript, pp. 24-28, 42-43.  For the convenience of the Court, plaintiffs' counsel

summarize their responses to each of the three challenged categories, and respectfully refer the

Court to Plaintiffs' Reply Brief and other record filings referenced herein.

12.     Category 4.  Category 4 encompasses: "Preparation and attendance at meetings;

coordination of actions."  Mr. Shashoua claims the time expended in category 4 was excessive.

In reasserting his objection that the "coordination time" was excessive and did not provide

substantial value, Mr. Shashoua continues to ignore the record support which was provided to

him and which describes the scope and importance of the work in this category.  As set forth in

---

[5] The lodestar categories referred to by Mr. Shashoua are found on the Eli Lilly Shareholder Derivative
Action Lodestar Category Breakdown chart (the "Lodestar Chart"), provided as Exhibit A (Document #
84-1) to the Declaration of Karen L. Morris in Support of Final Approval of Proposed Settlement and the
Award of Attorneys' Fees, Inclusive of Expenses (the "Morris Declaration," Document # 84).

Plaintiffs' Reply Brief (*see* pp. 11-12), detailed before Magistrate Judge Baker (*see* Transcript, p. 42) and supported by the Joint Attorney Declaration, category 4 included, *inter alia*, counsel's work undertaken in preparation for and participation in the meetings between plaintiffs' counsel and high level Lilly personnel, Company counsel, and counsel for the Lilly Special Litigation Committee.  It was through these meetings that the parties explored in depth the governance and compliance proposals plaintiffs' counsel provided Lilly (described under category 2 below) and how the proposed provisions set forth in plaintiffs' proposals could most effectively be implemented at Lilly.  These meetings, and the on-going exchange of ideas they generated, played a critical part in the parties' negotiation of the Corporate Governance Terms.  *See, e.g.*, Joint Attorney Decl., ¶¶ 52-56; Transcript, p. 42:1-9.

13.     Category 4 also includes counsel's work in successfully coordinating the multiple derivative actions, both demand made and demand futile,[6] filed in three separate jurisdictions around the country.  This work included the negotiation between the parties of the Settlement Process Agreement (*see* Joint Attorney Decl., ¶¶ 8-10; Transcript, p. 42:9-14) and the coordination among plaintiffs' counsel resulting in the Coordination Agreement, which governed the conduct of the litigation among plaintiffs counsel (*see* Joint Attorney Decl., ¶ 17; Transcript, p. 42:16-20).

14.     Absent this coordination effort, both defendants and plaintiffs would have confronted multidistrict, federal and state court litigation, necessarily entailing state and federal court motion practice, procedural motions addressed to remand and motions to stay.  Instead, the parties were able to put the cases on a coordinated track, efficiently address discovery and

---

[6] Indiana law provides for shareholder derivative actions as a means of seeking redress for harm to a corporation either following the board of directors' wrongful refusal of a pre-suit demand for remedial action, or without such a pre-suit demand, based on allegations that making a demand on the board would be futile, for example, because the board was not independent or disinterested.

explore a possible settlement.  Category 4 also includes Ms. Morris' time in overseeing and

coordinating the work among the plaintiffs' counsel firms as the case progressed.  *See* Joint

Attorney Decl., ¶¶ 17-19.

15.      Magistrate Judge Baker recognized the importance of this coordination effort, Co-

Chair Counsel's skill in managing that effort, and the value it brought to the successful litigation

of the Derivative Actions.  *See* Transcript, p. 28:14-20, where Magistrate Judge Baker stated to

Ms. Morris: "I have been impressed with the way all the lawyers have conducted themselves in

this litigation.  But I am particularly impressed with the way you have conducted the litigation

because I know that you've been spearheading this.  And for a case of this complexity, it has

gone – at least from my perspective – amazingly smoothly so."

16.      On the basis of the record before the Court, which stands unrefuted by Mr.

Shashoua, Magistrate Judge Baker considered and properly overruled Mr. Shashoua's objection

related to work encompassed under Category 4 of the Lodestar Chart.  *See* R&R, p. 2.

17.      Category 3.  Category 3 encompasses: "Discovery management, document

review, merits and damages analysis."  Mr. Shashoua alleges "duplication of effort and

inefficiencies in the way the work was managed" and contends that the Court should deduct

1100 hours "or approximately $650,000 to $750,000 for work done in this category."  *See*

Supplemental Objection, ¶ 7.  Mr. Shashoua's principal basis for this reduction is the fact that

discovery-related work was assigned to, and performed by, plaintiffs' firms that were not

identified as members of the original "Discovery Management and Merits Analysis Committee."

*Id.*  Nowhere does Mr. Shashoua claim the work was not performed.  Co-Chair Counsel

assigned counsel as needed to ensure the timely and efficient completion of the work required.

*See* Joint Attorney Decl., ¶ 21.  The fact that counsel were assigned to assist in tasks outside their

original committee designation is not a basis for failing to compensate necessary work, properly performed.

       18.    As set forth in Plaintiffs Reply Brief (*see* pp. 12-13), the evidentiary record details the careful nature of the assignment process for the review and analysis of the 70 depositions and accompanying exhibits which formed the bulk of the documents the Company produced.  As set forth in the Joint Attorney Declaration, Co-Chair Counsel assigned counsel to the review and analysis of individually designated depositions, with exhibits.  *See, e.g.*, Joint Attorney Decl., ¶¶ 32-33.  In his Objection to the R&R, Mr. Shashoua fails to refute, or even to address, this evidentiary record.

       19.    Mr. Shashoua's claim of overbilling or inefficiency in the review and analysis of these critical materials is equally unsupported and contrary to the record.[7]  The subject matter of these documents, relating to both fact and expert witnesses, was highly detailed and sophisticated information relevant to, *inter alia*, an assessment of safety and efficacy issues, pre- and post-marketing clinical studies, and off-label marketing and promotion of Zyprexa within the context of relevant FDA rules and guidelines.  *See* Joint Attorney Decl., ¶¶ 28-30.  As addressed at the final settlement hearing, counsel at the assigned firms, on average, expended approximately 30 hours per deponent, inclusive of the deposition transcript review, analysis of exhibits and drafting of analytic memoranda.[8]  *See* Plaintiffs' Reply Brief, p. 13; Transcript, p. 27:20-28:3.

       20.    As addressed in Plaintiffs' Reply Brief, this category encompasses not only the document analysis and review, but also the merits-related work, principally by the Greenfield

---

[7] Mr. Shashoua argues that the 85,000 pages of documents were not "an inordinate number of pages" as support for his contention that the number of hours expended reviewing these documents must reflect "duplication of effort and inefficiencies in the way the work was managed."  Supplemental Objection, ¶ 7.
[8] This figure was arrived at by dividing the number of hours listed on the Lodestar Chart for the Abbey, Faruqi, Paskowitz and Warner Firms under category 3 by the number of transcripts each reviewed, as listed at ¶¶ 32-33 of the Joint Attorney Declaration.

Firm, which included, *inter alia*, comprehensive analytic work underlying the merits analysis and the drafting of merits-related memoranda based on the deposition and document analysis performed by assigned counsel. This work was critical in the evaluation of liability in connection with the derivative claims, in supporting the drafting of plaintiffs' governance and compliance proposals, in the drafting of the mediation submission and participation in the mediation process, and in the formulation of the Corporate Governance Terms. *See* Joint Attorney Declaration, ¶¶ 34-38. In addition, this category includes the work of the Morris Firm in drafting document requests, negotiating with defendants in connection with the rolling production of documents, overseeing the document review process, including the integration of the merits work as it was developed, and assessing the underlying merits issues. *See id.*, ¶¶ 22-25, 27.

21.     On the basis of the record before the Court, which was unrefuted by Mr. Shashoua, Magistrate Judge Baker considered and properly overruled Mr. Shashoua's objections related to work encompassed under Category 3.[9]

22.     Category 2. Category 2 comprised: "Governance and compliance research, development and analysis." This category encompasses the central work undertaken in the crafting and development of plaintiffs' governance and compliance proposals. These proposals formed the basis for the negotiation process. This work is described in detail at ¶¶ 46-51 of the Joint Attorney Declaration.

23.     As with Category 3, Mr. Shashoua does not argue that the work in connection with the governance and compliance research, development and analysis reflected on the Lodestar Chart was not actually performed. Without basis in law or fact, he contends that

---

[9] At the Final Settlement Hearing, after refuting Mr. Shashoua's contentions with respect to categories 4 and 2 from the evidentiary record, Ms. Morris stated: "Now I can go on and address Category 3, if you would like." The Court declined, responding: "I think that's adequate." Transcript, p. 45: 16-19.

because work under this category was performed by firms who were not members of the original

"Governance and Compliance Development and Analysis Committee," the work is in some

manner suspect and should not be compensated.[10]  Mr. Shashoua does not offer any response to

the evidentiary record that (as detailed below) describes both the scope and nature of the work

assigned to specific plaintiffs' firms, and how that work contributed to the successful resolution

of the derivative claims.

24.      The work reflected under Category 2 was essential to the successful design of

plaintiffs' proposals and the negotiation of the Corporate Governance Terms.  As detailed at ¶ 5

of the Morris Declaration, the principal tasks captured under Category 2 include the substantial

work done in connection with the drafting of the Work Plan,[11] the extensive research, design and

drafting of plaintiffs' governance and compliance proposals (that were the subject of the

meetings described under category 4 above) and the analysis and collection of the expansive

supporting annotated exhibits, and work with plaintiffs' experts – particularly Dr. Glass – in

developing the proposals, intensive work undertaken principally by the Morris Firm.  *See* Joint

Attorney Declaration, ¶¶ 41-42, 46-48, 55.  The work of the Greenfield Firm – in light of its

principal responsibility for the merits analysis – in support of this effort was also critical.[12]

---

[10] *See, e.g.*, Supplemental Objection, ¶ 6: "It is incomprehensible why the governance and research hours
are scattered among all the different firms and with no pattern of billing resembling the roles outlined in
the Joint Declaration," or, in discussing work performed by the Greenfield Firm:  "The Greenfield firm is
not mentioned as one of the firms with principal responsibility in this area and yet are charging 493 hours
to the project!  This leads to an inescapable conclusion – the Greenfield firm did not follow the guidelines
that were established and proceeded outside the bounds of their duties as assigned by their own Executive
Committee to needlessly add at least $300,000 to the legal bill inclusive of the multiplier."
[11] Ms. Morris described the Work Plan to the Court as follows: "Your Honor, I'm especially proud of this
document that Michael Lindsey in our office authored.  It is a multi-page document bringing together all
of the statutes and regs that were going to have to be analyzed so that when a particular firm was given an
assignment, for example, of what's been the history of off-label notification so we could design the
proposals correctly, he literally already had the links to the statute."  Transcript, p. 43:14-24.
[12] *See, e.g.*, Transcript, p. 45:5-15, where Ms. Morris explained: "And most importantly when he
[Shashoua] questions the role of the Greenfield Firm, I remember many meetings that we had where Miss
Caldwell had to be at the meeting with Dr. Glass and with us because she was in charge of the merits

25.     Category 2 also includes the legal and factual research, analysis and drafting of

the memoranda by other plaintiffs' counsel, undertaken based on specific assignments at the

direction of the Morris Firm and pursuant to the Work Plan.  *See* Joint Attorney Decl., ¶ 43.  The

Joint Attorney Declaration details which firms performed this work and the specific topics that

were the subject of the research and analysis involved.  *See id.*, ¶¶ 43-45.  The resulting

memoranda addressed subject areas fundamental to understanding the regulatory context

necessary to form judgments about the design of plaintiffs' compliance proposals.[13]

26.     On the basis of the record before the Court, which stands unrefuted by Mr.

Shashoua, Magistrate Judge Baker considered and properly overruled Mr. Shashoua's objections

related to work encompassed under Category 2.

27.     The Mediation Process.  Mr. Shashoua's efforts to dismiss the mediation process

as a factor supporting the reasonableness of the requested fee is equally unfounded.  *See*

Shashoua Obj., p. 3 ("The great pains taken by the Morris firm to establish a process of

mediation is a disingenuous attempt to give credence to an inflated fee request.").  Mr.

Shashoua's insinuation that the mediation process presided over by retired Magistrate Judge

Infante was a sham is not supported by the record.

28.     As the record reflects, the fee was not negotiated until the substantive terms of the

settlement were complete.  *See, e.g.*, Joint Attorney Decl. ¶ 70; Infante Decl. ¶ 22.  The

mediation process was a rigorous one, designed to ensure arm's length negotiation.  *See, e.g.*,

Infante Decl. ¶ 23-32.  As Magistrate Judge Baker recommends the Court find, the mediation

---

analysis.  She was the one who was there to say, 'Here's what happened when they were considering
changing the label.  Here's what happened when they were deciding the scope of a particular study,' so
that Dr. Glass and we on the compliance side could then formulate these proposals."
[13] *See, e.g.*, Joint Attorney Decl., ¶ 45: "These memoranda assisted counsel both in the evaluation of
Lilly's compliance systems historically and in the development of Plaintiffs' compliance proposals,
providing the regulatory and industry framework necessary to craft Plaintiffs' governance, compliance
and medical risk management proposals … ."

process was "contentious." *See* R&R, ¶ 10.  The parties sought the assistance of a highly

respected former federal Chief Magistrate Judge to aid them in reaching a resolution with respect

to plaintiffs' counsels' fees.  The evidentiary record fully supports the arm's length and thorough

nature of the fee mediation process.  The record contains the Declaration of Judge Infante,

describing in detail the mediation process.  *See, e.g.*, Infante Decl., ¶ 23-32.  The Joint Attorney

Declaration, submitted by Co-Chair Counsel, addresses the process as well.  *See, e.g.*, Joint

Attorney Decl., ¶ 71-78.  Mr. Shashoua provides no credible basis to question the rigorous

mediation process which resulted in the requested award of fees, inclusive of expenses, nor the

Court's consideration of the arm's length mediation process as a factor to be weighed in

determining the reasonableness of the fee sought.  *See* plaintiffs' Final Approval Brief, pp. 68-

70.  The highly active role taken by Lilly's directors' and officers' carrier counsel and Company

counsel, the substantial materials provided during the mediation process, including plaintiffs'

counsel's work product and daily time records, as well as memoranda addressing applicable

Seventh Circuit authority, evidence an intensive, arm's length process.  Magistrate Judge Baker

properly credited the Declaration of Judge Infante, and accorded it appropriate weight in

reaching his recommendation.  *See, e.g.*, R&R, ¶ 5; plaintiffs' Final Approval Brief, pp. 68-69

(collecting authority).

      29.    For all of the reasons stated above, plaintiffs respectfully submit that Mr.

Shashoua's objection to the reasonableness of the attorneys' fee award recommended by

Magistrate Judge Baker should be overruled, and his request for the appointment of a special

master should be denied.

**CONCLUSION**

Mr. Shashoua does not object to the merits of the settlement and, for the reasons set forth

herein and based on the record before the Court, plaintiffs respectfully submit that Mr.

Shashoua's objection to ¶ 10 and ¶ 11, and to the words "in all respects" in ¶13 of the R&R is

without merit and should be denied.  Thus, there is no basis for the Court to delay approval of the

settlement.  Accordingly, plaintiffs request that the Court enter the proposed form of Order filed

herewith, adopting the R&R and overruling the Shashoua Objection.

Dated: June 25, 2010

Respectfully submitted,

s/ Karen L. Morris
Karen L. Morris
Patrick F. Morris
Richard M. Lindsey
`               MORRIS and MORRIS LLC
    COUNSELORS AT LAW
4001 Kennett Pike, Suite 300
Wilmington, DE 19807
Phone: (302) 426-0400
Fax: (302) 426-0400
kmorris@morrisandmorrislaw.com

Richard D. Greenfield
Ann M. Caldwell
GREENFIELD & GOODMAN, LLC
250 Hudson Street – 8th Floor
New York, NY 10013
Phone: (917) 495-4446

David C. Campbell
BINGHAM MCHALE LLP
10 West Market Street, Suite 2700
Indianapolis, IN  46204-4900
Phone: (317) 635-8900

James P. Stenski
CANTRELL, STRENSKI & MEHRINGER, LLP
2400 Market Tower
10 West Market Street

16

Indianapolis, IN  46204
Phone: (317) 352-3500

*Attorneys for Plaintiffs, Jeffrey P. Jannett and N.A. Lambrecht, Derivatively on Behalf of Nominal Defendant, Eli Lilly & Company*

Of Counsel:

ABBEY SPANIER RODD & ABRAMS LLP
Karin E. Fisch
212 East 39th Street
New York, NY  10016

COUGHLIN, STOIA, GELLER, RUDMAN & ROBBINS LLP
Andrew J. Brown
655 West Broadway, Suite 1900
San Diego, CA 92101

FARUQI & FARUQI, LLP
Beth A. Keller
369 Lexington Avenue, 10th Floor
New York, NY 10017

PASKOWITZ & ASSOCIATES
Lawrence D. Paskowitz
60 East 42nd Street, 46th Floor
New York, NY  10165

ROBBINS UMEDA LLP
Daniel R. Forde
600 B Street, Suite 1900
San Diego, CA 92101

ROY JACOBS & ASSOCIATES
Roy L. Jacobs
60 E. 42nd Street, 46th Floor
New York, NY 10165

THE WARNER LAW FIRM
Paul T. Warner
11123 McCracken Circle, Suite A
Cypress, TX 77429

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 25, 2010, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Michael E. Baughman
Robert L. Hickok
PEPPER HAMILTON LLP
baughmanm@pepperlaw.com
hickokr@pepperlaw.com

Christopher G. Scanlon
Matthew T. Albaugh
BAKER & DANIELS
chris.scanlon@baker.com
matthew.albaugh@bakerd.com

Jan M. Carroll
BARNES & THORNBURG LLP
jan.carroll@btlaw.com

Peter T. Barbur
Duane L. Loft
Kyle W. Mach
CRAVATH SWAINE & MOORE LLP
pbarbur@cravath.com
dloft@cravath.com
kmach@cravath.com

Marc J.M. Moss
MARC J.M. MOSS, ESQ.
mmoss@mosslawllc.com

Paul T. Warner
THE WARNER LAW FIRM
pwarner@warner-law.net


                                                        *s/* Patrick F. Morris